Filed 6/3/14; mod. & pub. orders 6/24/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| OCEAN AVENUE LLC, | B246499 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC462619) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Joanne O'Donnell, Judge. Affirmed and remanded with directions.

John F. Krattli, County Counsel and Albert Ramseyer, Principal Deputy County Counsel, for Defendant and Appellant.

Ajalat, Polley, Ayoob & Matarese, Christopher J. Matarese, Richard J. Ayoob and Gregory R. Broege, for Plaintiff and Respondent.

_____

Raised herein is the following tax issue: Is there a Proposition 13 change in ownership of property held by a limited liability company when all of its membership interests are sold but no one person or entity obtains, directly or indirectly, more than a 50 percent interest in the capital and profits? The answer is no. Accordingly, the trial court properly concluded that the Los Angeles County Assessor (Assessor) should not have reassessed Ocean Avenue LLP's (Ocean Avenue) property as of July 7, 2006, and that Ocean Avenue was entitled to a judgment for a tax refund. The County of Los Angeles (County) urges us to uphold the reassessment on the theory that a single person obtained majority control of the capital and profits; an aborted sales contract entered into on July 7, 2006, triggered the doctrine of equitable conversion; the substance over form test applied in federal tax cases should be applied in California; and the existing tax legislation is unconstitutional because it conflicts with either the letter or spirit of Proposition 13. Due to a lack of evidence, supporting law, or both, these arguments lack traction. Consequently, we affirm the judgment.

Ocean Avenue requests attorney fees on appeal pursuant to Revenue and Taxation Code section 5152.[1] That matter is remanded to the trial court and deferred pending our resolution of the County's currently stayed appeal in which it challenges the trial court's award of section 5152 attorney fees below.

## FACTS

Since 1999, the Fairmont Miramar Hotel (Hotel) has been owned by Ocean Avenue, an entity formed by Hotel Equity Fund VII, L.P. (Equity Fund). In March 2006, the Hotel was put up for sale. On July 7, 2006, Ocean Avenue entered into a contract (Initial Contract) to sell the Hotel to 101 Wilshire, LLC.[2] On September 6, 2006, the parties signed a document in which they terminated the Initial Contract and related

---

[1] All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

[2] The County maintains that 101 Wilshire LLC was formed by MSD Capital LP (MSD Capital).

2

escrow. The same day, Equity Fund sold 100 percent of its membership/ownership interest in Ocean Avenue as follows: The Susan Lieberman Dell Separate Property Trust acquired a 49 percent interest; MSD Portfolio, L.P.—Investments (MSD Portfolio) acquired a 42.5 percent interest; and Miramar Hotel Investor, LLC (Hotel Investor LLC) acquired a 8.5 percent interest.

Michael Dell directly owns 99 percent of MSD Portfolio. The other 1 percent is owned by MSD Capital. Because Michael Dell owns 99 percent of MSD Capital, he directly or indirectly owns 99.9 percent of MSD Portfolio.[3] There is no dispute that Michael Dell effectively owns 42.5 percent of Ocean Avenue through MSD Portfolio.

Hotel Investor LLC has four owners. They are Kingfish Investments V, LLC (Kingfish), Blue Fin Investments, LLC (Blue Fin), Michelangelo LLC (Michelangelo), and 645 Investments V, LLC (645 Investments). Blue Fin and Michelangelo each own a separate 36.5326 percent interest in Hotel Investor LLC. John Phelan owns a 66.67 percent profits interest in Blue Fin and a 6.67 percent capital interest. With respect to Michelangelo, Glen Fuhrman (Fuhrman) holds the exact same interests. MSD Capital owns a 33.3 percent profits interest and a 93.3 percent capital interest in both Blue Fin and Michelangelo.[4]

Melissa Sexton (Sexton), a staff member who worked for the Assessor, investigated and then analyzed whether the Hotel should be reassessed on the theory that one person had acquired more than a 50 percent ownership interest in Ocean Avenue such that there was a change in ownership for purposes of Proposition 13, the relevant tax

---

[3]    According to Ocean Avenue, Susan Lieberman Dell owns .000001 percent of MSD Portfolio.

[4]    The attorney for MSD Capital testified regarding his understanding of how Michelangelo's net income would be distributed under its operating agreement. He said that capital investments would receive a preferred rate of return (1 to 1.5 percent interest on capital). Next, net income would be used to pay back investors for their capital contributions. Then, and only then, would the net income be split two-thirds for Fuhrman and one-third for MSD Capital. We presume that Blue Fin was set up in the same manner.

statutes (§§ 60, 64),[5] and the relevant tax rules (Cal. Code. Regs., tit. 18, § 462.180). Using a multiply-through test, she concluded that Michael Dell had only a 47.82 percent interest, and no one had an interest that exceeded 50 percent.[6] Nonetheless, the Assessor reassessed the Hotel.

Ocean Avenue appealed to the Los Angeles County Assessment Appeals Board (Board). The Board concluded there was a change of ownership based on any of the following theories: Equity Fund transferred all of its ownership rights in the Hotel; the Initial Contract between Equity Fund and 101 Wilshire, LLC was enforceable, so the Hotel transferred on July 7, 2006, by equitable conversion; or, Michael Dell controlled more than 50 percent of the capital invested in the purchase, plus he had a right to profits, including a preferred rate of return. The Board upheld the reassessment, noting that the "revision of the original transaction . . . was only for the purpose of avoiding property tax reassessment. The real objective of the transaction was to transfer the Hotel's ownership in its entirety."

Subsequently, Ocean Avenue filed a complaint for a tax refund of $314,680.95 and alleged, inter alia, that because there had been no change in the Hotel's ownership, the Hotel could not lawfully be reassessed. The trial court entered a judgment in favor of Ocean Avenue.

This timely appeal followed.

---

**5**      Section 60 provides that a change in ownership means "a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest." Under section 64, subdivision (a), however, the transfer of interests in legal entities, such as limited liability companies, "shall not be deemed to constitute a transfer of the real property of the legal entity." Section 64, subdivision (c) creates an exception to subdivision (a) when one person or entity obtains a majority interest in the legal entity which owns real property. In that situation, there is a change in ownership. Section 64, subdivision (a) and (c) are implemented by the corresponding tax rules in the California Code of Regulations. (Cal. Code. Regs., tit. 18, § 462.180, subds. (c) & (d)(1)(B).)

**6**      Testimony from Sexton suggested that a second staff member also concluded that no one acquired more than a 50 percent interest.

After the trial, Ocean Avenue filed motion for attorney fees pursuant to section 5152 and sought $252,118.75.  Under that statute, a prevailing taxpayer can recover attorney fees if an assessor, believing a tax law is unconstitutional, acted contrary to the tax law without first seeking declaratory relief.  The trial court noted that the "gist of [the County's] position, both before the Board and in the court trial, was that the court should not apply Section 64[, subdivision] (a) because the scenario it protects—that seized upon by the Dells—is 'too good to be true.'"  To support this finding, the trial court quoted numerous statements by County witnesses.  Then the trial court stated:  "In short, [the County] advanced the Constitution and the 'too good to be true' doctrine as an alternative to following the plain language of the statute.  While [the County] does not expressly charge that the statute and the rule are unconstitutional or invalid, its position is transparent.  [The County] would not have urged the court to disregard the statute if it did not believe it was unconstitutional or otherwise invalid.  Accordingly, [the County] was required to bring a declaratory relief action, not merely tax [Ocean Avenue] and force it to file suit.  Because [the County] did not do so, [Ocean Avenue] is entitled to its attorney's fees under [section 5152]."

The trial court granted Ocean Avenue's motion.  The County appealed.  That attorney fees appeal is stayed until we render an opinion resolving the appeal from the judgment.

## STANDARD OF REVIEW

"The issue of whether, based on a set of undisputed facts, there has been a change in ownership for purposes of property tax assessment 'is a question of law subject to this court's independent de novo judicial review.'  [Citation.]" (*Fashion Valley Mall, LLC v. County of San Diego* (2009) 176 Cal.App.4th 871, 877.)

5

**DISCUSSION**

## I. Proposition 13; Binding Regulations.

Proposition 13, adopted by California voters in 1978, added article XIIIA to our state Constitution and "limited the rate at which real property in this state may be taxed and the extent to which the assessed value of real property may be increased. As [provided], real property may be taxed at no more than 1 percent of its 'full cash value,' with 'full cash value' defined to mean either the assessed value of that property in the 1975–1976 tax year or the property's value at the time of a subsequent 'change in ownership,' subject to an adjustment for inflation. [Citation.] Thus, real property generally is taxed based on its value at the time of acquisition, not its current value. The task of defining when there has been a change in ownership that triggers reassessment has been left largely to the Legislature. [Citation.]" (*Holland v. Assessment Appeals Bd. No. 1* (2014) 58 Cal.4th 482, 485.)

The State Board of Equalization has promulgated administrative regulations interpreting the change in ownership statutes. "Local assessors must follow these regulations." (*Industrial Indemnity Co. v. City and County of San Francisco* (1990) 218 Cal.App.3d 999, 1006, citing Gov. Code, § 15606, subds. (c), (h).)

## II. The Applicable Property Tax Rule.

Generally, the purchase of an ownership interest in a legal entity is not a change in ownership of the real property held by that entity. (Cal. Code. Regs., tit. 18, § 462.180, subd. (c).) But there are exceptions. One provides that there is a change of ownership in real property owned by a limited liability company "[w]hen any corporation, partnership, limited liability company, Massachusetts business trust or similar trust, other legal entity or any person: [¶] . . . [¶] (B) obtains through multi-tiering, reorganization, or any transfer direct or indirect ownership of more than 50 percent of the total interest in [the limited liability company's] capital and more than 50 percent of the total interest in [its] profits[.]" (Cal. Code. Regs., tit. 18, § 462.180, subd. (d)(1)(B).)

6

## III. The Change in Ownership Theory.

The County contends that there was a change in ownership of the Hotel. As discussed below, we disagree.

Exhibits submitted to the Board to support Ocean Avenue's tax appeal reveal that Sexton and another staff person in the Assessor's office applied a multiply-through test to conclude that Michael Dell acquired about a 48 percent interest in Ocean Avenue, and that no one person acquired more than 50 percent. Thus, the evidence submitted below established that Michael Dell's indirect interests in the capital of Ocean Avenue did not exceed the 50 percent threshold. Moreover, there was no evidence that he owned an indirect interest in more than 50 percent of the profits. The County makes no attempt to debunk the multiply-through test applied by the Assessor's staff. Nor does it provide and apply a different formula for calculating Michael Dell's interests. Thus, California Code of Regulations, title 18, section 462.180, subdivision (d)(1)(B) has no application.

According to the County, it "should be undisputed that Michael S. Dell has a majority interest in the capital of Ocean Avenue LLC." As indicated by the numbers relied upon by the County, this argument fails. According to the County, Michael Dell owns 99.99 percent of the capital of MSD Portfolio, which owns 42.5 percent of Ocean Avenue. He owns 93.3333 percent of Blue Fin and Michelangelo, and those two entities, collectively, own 73.065 percent of Hotel Investor, which owns 8.5 percent of Ocean Avenue. The flaw in the County's argument is that it never does the math. The multiply-through test reveals the following: Michael Dell's capital interest in Ocean Avenue through MSD Portfolio is 42.49575 percent, which is the sum of .9999 x 42.5. His interest in Ocean Avenue through Hotel Investor is derived by multiplying .933333 by 73.065, the sum of which is 68.194, and then by multiplying .68194 by 8.5, to reach 5.79649 percent. When 42.49575 percent is added to 5.79649 percent, the total is 48.29224 percent.[7]

---

[7] Our calculations are similar to the calculations on the worksheets done by Sexton and another member of the Assessor's staff. One worksheet containing rounded off numbers showed that because MSD Portfolio owned 42.5 percent of Ocean Avenue, and

In a convoluted argument, the County argues that Michael Dell controls a majority of the capital and profits of Blue Fin and Michelangelo, and that this somehow results in a majority interest in Ocean Avenue. But even supposing Michael Dell owned 100 percent of Blue Fin and Michelangelo, it would not matter. Those two entities have a 73.065 interest in Hotel Investor, which has an 8.5 percent interest in Ocean Avenue. If .73065 is multiplied by 8.5, the sum is 6.210525. When 6.210525 is added to 42.49575, the equation reveals a figure that is still less than a 50 percent interest in Ocean Avenue, i.e., a 48.706275 percent interest.

## IV. The Substance Over Form Theory.

The County next argues that we should apply the substance over form doctrine set forth by the United States Supreme Court for analyzing federal tax issues (*Frank Lyon Co. v. United States* (1978) 435 U.S. 561, 573; *Commissioner v. Court Holding Co.* (1945) 324 U.S. 331, 334) and conclude that the economic reality of the underlying transactions was a sale of the Hotel. This argument lacks merit. First, this is a California property tax issue, not a federal income tax issue, which means that federal law is not controlling or even helpful. Second, the Board was bound by the property tax rules in the California Code of Regulations, so we cannot justify departing from those rules to uphold the Board's decision. And third, the County failed to show that the sale of Ocean Avenue's membership was the equivalent of a sale of the Hotel, i.e., an asset sale. Notably, general counsel for MSD Capital testified in front of the Board that a purchase of Ocean Avenue's membership involved much more than a purchase of the Hotel. For example, it involved the acquisition of a pension liability as well as succession to liquor licenses and business permits.

---

because Michael Dell owned 99 percent of MSD Portfolio, the formula for Michael Dell's interest in Ocean Avenue through MSD Portfolio was this: .99 x 42.5 = 42.08. Multiplying Michael Dell's interest through Michelangelo and Blue Fin, and then through Hotel Investor, the worksheet concluded that his interest was 5.736 percent. The worksheet added the sum of 42.08 percent and 5.736 percent to establish that Michael Dell's interest in Ocean Avenue was 47.82 percent. Another worksheet, which contained more decimal fractions, concluded that Michael Dell's direct and indirect interest in Ocean Avenue was 48.19068 percent.

8

## V. The Equitable Conversion Theory.

In the County's view, the Hotel changed ownership on July 7, 2006, under section 60, the day the Initial Contract was signed, based on equitable conversion. As we discuss below, this argument misses the mark.

"An unconditional contract for the sale of land, of which specific performance would be decreed, grants the purchaser equitable title, and equity considers him the owner. [Citations.]" (*Parr-Richmond Industrial Corp. v. Boyd* (1954) 43 Cal.2d 157, 165 (*Parr-Richmond*) [no equitable conversion for property tax purposes because the seller did not have merchantable title and the sale contract was not subject to specific enforcement at the time of assessment].) Regardless of the foregoing rule, equitable conversion "may or may not be absolute. Whether it is, or not, will depend upon whether the terms of the contract of sale are subsequently complied with." (*In re Estate of Dwyer* (1911) 159 Cal. 664, 675.) And, in any event, "there is no equitable conversion where the contracting parties demonstrate an intention to the contrary. [Citations.]" (*Parr-Richmond*, *supra*, at p. 166.) Further, the doctrine will not be invoked when "it would compel an inequitable result[.]" (13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 174, p. 502.)

Here, there was no equitable conversion because the contractual terms were never satisfied, and the parties demonstrated an intention contrary to equitable conversion when they terminated the Initial Contract.

But even if there was equitable conversion on July 7, 2006, there was no change in ownership. For section 60 to trigger a reassessment, there must be a present interest, a transfer of the property's beneficial use, and the value of the interest transferred must be substantially equal to the value of the fee interest. (*Reilly v. City and County of San Francisco* (2006) 142 Cal.App.4th 480, 492–496 (*Reilly*).) As discussed below, this three-prong test cannot be satisfied.

On July 7, 2006, any interest obtained by 101 Wilshire, LLC was contingent because the sale contained conditions precedent, such as payment of the purchase price. Also, 101 Wilshire, LLC was not obligated to purchase the Hotel unless Ocean Avenue

delivered various documents, books and records, keys and other items. The *Reilly* court explained that "the 'present interest' requirement [was] an attempt to avoid treating contingent . . . transfers as changes in ownership[.]" (*Reilly, supra*, 142 Cal.App.4th at p. 492, citing the Report of the Task Force on Property Tax Administration.) In light of the foregoing, we conclude that on July 7, 2006, 101 Wilshire, LLC's interest, if any, was not a present interest under section 60.

Nor was there a transfer of beneficial use because, under the Initial Contract, Ocean Avenue was entitled to all revenue and responsible for all expenses pertaining to the Hotel until the date of closing. As explained by *Reilly*, "The receipt of income generated by property qualifies as a 'beneficial use' of the property[.]" (*Reilly*, *supra*, 142 Cal.App.4th at p. 495.) Moreover, there is no dispute that Ocean Avenue retained legal title. Evidence Code section 662 provides: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." When analyzing whether there has been a change in ownership under section 60, courts have applied this rule. (*Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 164.) The County makes no attempt to rebut the presumption.

Finally, the County adverts to no evidence that the value of what 101 Wilshire LLC received on July 7, 2006, was substantially equal to the value of the fee interest. In particular, the County fails to point to any testimony or documents in which 101 Wilshire, LLC's contingent interest was assigned a value and found to substantially compare to the value of a fee interest.

## VI. The Constitutional Theory.

The County argues that Proposition 13 should control our analysis, not the Revenue and Taxation Code or the tax rules in the regulations. Further, it argues that any legislation that is inconsistent with Proposition 13 is unconstitutional. There are a variety of infirmities with these arguments. First, the Board was bound by the tax rules, and it therefore erred when it did not follow them. Second, Proposition 13 did not define change in ownership, so it does not contradict the definitions of change in ownership in

10

section 64 and the tax rules in California Code of Regulations, title 18, section 462.180. Third, the Assessor was not permitted to reassess the Hotel on the theory that the legislation is unconstitutional without first prevailing in a declaratory relief action on that issue.[8]

## VII. Attorney Fees.

Section 5152 provides in part: "In an action in which the recovery of taxes is allowed by the court, if the court finds that the void assessment or void portion of the assessment was made in violation of a specific provision of the Constitution of the State of California, of this division, or of a rule or regulation of the board, and the assessor should have followed the procedures set forth in Section 538 in lieu of making the assessment, the plaintiff shall be entitled to reasonable attorneys' fees as costs in addition to the other allowable costs." Before awarding attorney fees, a trial court must make a factual finding that a flawed assessment was based on the Assessor's belief that a tax law was unconstitutional rather than a misunderstanding of the law. (*Phillips Petroleum Co. v. County of Lake* (1993) 15 Cal.App.4th 180, 197–198 ["Section[s] 5152 and 538 require a cognitive decision on the part of the assessor that a particular provision, rule or regulation is unconstitutional or invalid either on its face or as applied to the circumstances in the case"].)

---

[8] In relevant part, section 538, subdivision (a) provides: "If the assessor believes that a specific provision of the Constitution of the State of California, of this division, or of a rule or regulation of the [State Board of Equalization] is unconstitutional or invalid, and as a result thereof concludes that property should be assessed in a manner contrary to such provision, . . . the assessor shall, in lieu of making such an assessment, bring an action for declaratory relief against the board under Section 1060 of the Code of Civil Procedure." In addition, the California Constitution, article III, section 3.5 provides, in relevant part: "An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power: [¶] (a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional; [¶] (b) To declare a statute unconstitutional[.]"

Ocean Avenue requests attorney fees on appeal because the Assessor failed to comply with section 538 before reassessing the Hotel.  We conclude that this matter must be deferred until after we decide the County's related appeal challenging the award of section 5152 attorney fees below.

## DISPOSITION

We affirm the judgment.  Regarding Ocean Avenue's request for section 5152 attorney fees on appeal, that matter is remanded to the trial court and deferred pending our resolution of the County's appeal of the award of section 5152 attorney fees below. Ocean Avenue is entitled to its costs on appeal.


_____, J.
                                    ASHMANN-GERST

We concur:


_____, P. J.
        BOREN


_____, J.[*]
        FERNS

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 6/24/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| OCEAN AVENUE LLC,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>COUNTY OF LOS ANGELES,<br><br>        Defendant and Appellant. | B246499<br><br>(Los Angeles County<br>Super. Ct. No. BC462619)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>**[NO CHANGE IN JUDGMENT]** |

THE COURT:\*

        It is ordered that the opinion filed herein on June 3, 2014, be modified as follows:

        1.        On page 5, the first sentence of the first full paragraph, beginning "After the trial" is deleted and the following sentence is inserted in its place:

        After the trial, Ocean Avenue filed a motion for attorney fees pursuant to section 5152.

_____

\*        BOREN, P. J., ASHMANN-GERST, J., FERNS, J.†


†        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2.      On page 5, the first sentence of the second full paragraph, beginning "The trial court granted" is deleted and the following sentence is inserted in its place:

> The trial court granted Ocean Avenue $252,118.75 in attorney fees.

3.      On page 8, the last full paragraph, beginning "The County next argues" is deleted and the following paragraph is inserted in its place:

> The County next argues that we should apply the substance over form doctrine set forth by the United States Supreme Court for analyzing federal tax issues (*Frank Lyon Co. v. United States* (1978) 435 U.S. 561, 573; *Commissioner v. Court Holding Co.* (1945) 324 U.S. 331, 334) and conclude that the economic reality of the underlying transactions was a sale of the Hotel.  This argument lacks merit.  First, this is a California property tax issue, not a federal income tax issue, which means that federal law is not controlling or even helpful.  Second, the Board was bound by the property tax rules in the California Code of Regulations, so we cannot justify departing from those rules to uphold the Board's decision.

There is no change in the judgment.

Appellant's Petition for Rehearing is denied.

Filed 6/24/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| OCEAN AVENUE LLC,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>COUNTY OF LOS ANGELES,<br><br>     Defendant and Appellant. | B246499<br><br>(Los Angeles County<br>Super. Ct. No. BC462619)<br><br>**ORDER CERTIFYING OPINION<br>FOR PUBLICATION** |

THE COURT:[*]

        The opinion in the above-entitled matter filed on June 3, 2014, was not certified for publication in the Official Reports.

        For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

[*]      BOREN, P. J., ASHMANN-GERST, J., FERNS, J.[†]

[†]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.