*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 90**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

SMS FINANCIAL, LLC,
*Appellant,*

*v.*

CBC FINANCIAL CORPORATION and BARTON MAYBIE,
*Defendants,*

and

CALL CENTER BUILDING, LLC,†
*Appellee.*

No. 20150916
Filed December 27, 2017

On Direct Appeal

Third District, West Jordan
The Honorable James Gardner
No. 136400004

Attorneys:

Zachary E. Peterson, Salt Lake City, for appellant

David M. Bennion, Salt Lake City, for appellee

JUSTICE HIMONAS authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE PEARCE, and JUDGE HYDE joined.

Having recused herself, JUSTICE DURHAM did not participate herein; DISTRICT COURT JUDGE NOEL HYDE sat.

---

† Call Center Building, LLC was an intervenor in the district court below and is the sole appellee before this court. CBC Financial Corporation and Barton Maybie have not joined this appeal.

JUSTICE HIMONAS, opinion of the Court:

**INTRODUCTION**

¶1   Does the doctrine of equitable conversion operate to protect a buyer of real property's interests in the land from a seller's creditors from the time the buyer's contract is capable of specific enforcement? In a well-reasoned decision, the district court determined that the Real Estate Purchase Contract (REPC) at issue was an executory real estate contract and, as such, it was "subject to the equitable conversion doctrine." Thus, the district court concluded that the seller's creditor was unable to attach a judgment lien to land that the seller had already entered into a REPC to sell. SMS Financial, LLC appeals this judgment, arguing that equitable conversion doesn't apply to noninstallment land sales contracts, or, alternatively, that unfulfilled conditions in the REPC prevented it from being specifically enforceable at the time SMS recorded its judgment.

¶2   SMS's arguments are unpersuasive. We agree with the district court's analysis, hold that the doctrine of equitable conversion operates to protect a buyer's interest in the land from the time a land sales contract is capable of being specifically enforced by the buyer and, therefore, affirm the district court's decision.

**BACKGROUND**

¶3   In October 2012, SMS Financial obtained a judgment against CBC Financial Corporation in a Nevada state court. At that time, CBC owned a piece of real property located in Salt Lake County. SMS domesticated its judgment in Utah's Third District Court on January 16, 2013, but it didn't record an abstract of judgment with the Salt Lake County Recorder's Office, as required by Utah Code section 78B-5-202, until March 4, 2013.

¶4   Meanwhile, between the time SMS domesticated its judgment and recorded it, CBC entered into a REPC on February 15, 2013, to sell the Salt Lake County property to Kevin Gates or assigns for $1,500,000. Mr. Gates put down $10,000 in earnest money on February 19, 2013. Mr. Gates subsequently assigned his rights under the REPC to Call Center Buildings, LLC on March 19, 2013.

¶5   On March 21 and 26, 2013, Gates or Call Center received title commitments for the property that identified SMS's judgment lien on the property. Despite this, the sale under the REPC successfully closed, and CBC conveyed the property to Call Center by a special warranty deed on March 27, 2013. It wasn't until May 12, 2015 that

SMS filed for a writ of execution on its lien against the property. Call Center intervened in the action to protect its right to the property. The district court denied SMS's writ of execution, concluding that the doctrine of equitable conversion applied and that CBC didn't have a property interest at the time SMS recorded its abstract of judgment, preventing the lien from attaching to the property. SMS appeals this determination. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶6 "We review a grant of equitable relief for an abuse of discretion." *Mack v. Utah State Dep't of Commerce, Div. of Sec.*, 2009 UT 47, ¶ 22, 221 P.3d 194. But "[w]e review the underlying legal questions . . . for correctness." *Id.*

## ANALYSIS

¶7 This court has long applied the doctrine of equitable conversion to executory contracts for the sale of land. *See, e.g., Allred v. Allred*, 393 P.2d 791, 792 (Utah 1964) ("As a general rule an enforceable executory contract of sale has the effect of converting the interest of the vendor of real property to personalty."). Our prior cases have only applied the doctrine of equitable conversion to seller-financed installment contracts for the sale of land. *See, e.g., Cannefax v. Clement*, 818 P.2d 546, 546–47 (Utah 1991); *Estate of Willson v. State Tax Comm'n*, 499 P.2d 1298, 1299 (Utah 1972); *Allred*, 393 P.2d at 792. And SMS urges us to limit the application of equitable conversion to installment contracts. Alternatively, SMS argues that the REPC wasn't specifically enforceable when it recorded its judgment against CBC, precluding the application of equitable conversion in this case. However, the only conditions that hadn't been satisfied wouldn't preclude the buyer from seeking specific performance. In opposition, Call Center argues that the principles behind equitable conversion warrant its application when a land sale contract becomes capable of specific enforcement.

¶8 While the court of appeals has previously held that equitable conversion applies to noninstallment land sale contracts, *Lach v. Deseret Bank*, 746 P.2d 802, 804, 806 (Utah Ct. App. 1987), we've yet to decide that issue. We take this opportunity to express our general agreement with the court of appeals on this issue and to hold that the doctrine of equitable conversion operates to protect a buyer's interests in land when a land sale contract becomes capable of specific enforcement by the buyer, including where buyer-friendly conditions have yet to be satisfied.

## I. THE DOCTRINE OF EQUITABLE CONVERSION OPERATES TO PROTECT A BUYER'S INTERESTS IN THE LAND FROM A SELLER'S CREDITORS WHEN AN EXECUTORY CONTRACT FOR THE SALE OF LAND BECOMES CAPABLE OF SPECIFIC ENFORCEMENT BY THE BUYER

¶9    The doctrine of equitable conversion "emanates from the maxim that equity treats that as *being* done which *should* be done." *Noor v. Centreville Bank*, 996 A.2d 928, 932 (Md. Ct. Spec. App. 2010) (citation omitted) (internal quotation marks omitted). "[T]he doctrine of equitable conversion applies to transform a [seller's] interest in a land sale contract from a real property interest into a personal property interest." *Cannefax v. Clement*, 818 P.2d 546, 548 (Utah 1991). Similarly, "[t]he [buyer] is said to convert the monetary interest that he has in the property to an interest in real estate so that he may invoke the powers of an equity court to compel specific performance of the real estate contract." *Butler v. Wilkinson*, 740 P.2d 1244, 1255 n.5 (Utah 1987).

¶10   However, this isn't to say that it would be appropriate to apply the doctrine of equitable conversion in every case. The doctrine should be applied when it "serves to carry out the apparent intent" of the parties. *Allred v. Allred*, 393 P.2d 791, 792 (Utah 1964); *see also Cannefax*, 818 P.2d at 549 n.1 ("The parties clearly intended to convey unencumbered title to the land. They certainly did not intend that after they entered into the contract and after payments were made, the vendor's judgment creditors could obtain and execute on the vendee's property to the extent the contract was executory.") Conversely, it would be inappropriate to apply the doctrine to "alter [a] contract," *Cannnefax*, 818 P.2d at 548 (citing *Reynolds v. Van Wagoner*, 592 P.2d 593, 594 (Utah 1979)), to thwart the express contractual desire of the parties to reserve equitable title in the seller until the deed was delivered or where a contract explicitly excludes specific performance as a remedy. *See Noor*, 996 A.2d at 935–36 (refusing to apply equitable conversion where the contract "reserv[ed] equitable title in [the seller] until delivery of the deed"); *Benedict v. United States*, 881 F. Supp. 1532, 1548–49 (D. Utah 1995) ("Whatever the partnerships had, it was not an equitably converted property interest . . . as the purchase agreement limited their remedies to exclude specific performance.").

¶11   Thus, we disavow today any language in our case law that could be read to require the application of the doctrine "at the moment the contract is created" in circumstances where the contract wouldn't be immediately specifically enforceable. *Lach v. Deseret*

*Bank*, 746 P.2d 802, 805 (Utah Ct. App. 1987). Instead, we conclude that the doctrine operates to protect a buyer's interests from a seller's creditors as soon as the contract becomes capable of specific enforcement by the buyer—in other words, at the time the buyer could sue the seller for specific enforcement of the contract if the seller fails to perform. *See Estate of Willson v. State Tax Comm'n*, 499 P.2d 1298, 1300 (Utah 1972) (noting that "the real estate is, as to the vendor, regarded as converted into personalty from the time of the execution of the contract" in a case where the vendor could have sued for specific performance from the moment of signing).

¶12 This specific enforcement limitation is supported by both case law on equitable conversion and the intent of the parties. Our cases have long tied, albeit indirectly, the application of equitable conversion to the availability of specific performance. *See, e.g.*, *Cannefax*, 818 P.2d at 549 ("[A] vendor who breaches a land sale contract in an attempt to retain the property will be subject to either damages or a decree for specific performance."); *Butler v. Wilkinson*, 740 P.2d 1244, 1255 (Utah 1987) ("The doctrine [of equitable conversion] gives a vendee the right to obtain a decree of specific performance from a court of equity."); *Estate of Willson*, 499 P.2d at 1300 (noting that the sellers "could have sued for specific performance in the event the buyers refused to perform their part of the contract"); *Allred*, 393 P.2d at 792 (noting that "there appears no good reason why the doctrine of 'equitable conversion' should not be applied" where the vendors "could have sued for specific performance in the event the vendees . . . refused to perform their part of the agreement"); *Lach*, 746 P.2d at 805 (Equitable conversion applies to "an enforceable executory contract of sale [upon which an action for specific performance could be brought] . . . ." (first alteration in original) (quoting *Estate of Willson*, 499 P.2d at 1300)). But we don't require an actual breach of the contract by the seller for equitable conversion to apply—it's sufficient that the transfer of title is solely dependent upon events outside of the seller's hands, entitling the buyer to specific performance if the seller fails to perform. *See Cannefax*, 818 P.2d at 549–50 ("Even though the vendor may retain title to the property, that title is effectively held for the benefit of the vendee, to whom it will pass if the contract is carried out."); *Estate of Willson*, 499 P.2d at 1300 ("As a general rule an enforceable executory contract of sale has the effect of converting the interest of the vendor of real property to personalty." (citation omitted)).

¶13 Other courts have directly considered this issue and determined that, based on a "well-recognized caveat" to equitable

conversion, "which also emanates from the underlying equity maxim, . . . for equitable conversion to apply, there must, in fact, be a clear duty on the part of the seller to convey the property, a duty enforceable by an action for specific performance." *Noor*, 996 A.2d at 933 ("[E]quitable conversion would not take effect until that condition or contingency [on a seller's duty to convey] is resolved to the point that the duty can be specifically enforced."); *see also Benedict*, 881 F. Supp. at 1548 (noting that equitable conversion "is firmly linked to the specific enforceability of the contract") (citation omitted)); *Francini v. Town of Farmington*, 557 F. Supp. 151, 155 (D. Conn. 1982) ("[B]efore one can claim equitable title, one must be in a position that a court of equity could, in exercising its jurisdiction over the parties, convey legal title."); *Steele v. Rosenfeld, LLC*, 936 So. 2d 488, 493 (Ala. 2005) ("[E]quitable conversion is applicable *only when there is a specifically enforceable contract* between the parties, and the changes in the rights, duties, powers, and liabilities of the parties that result from the making of the contract are consequences of the equitable right to specific performance . . . ." (citation omitted)); *Ocean Ave. LLC v. Cty. of L.A.*, 173 Cal. Rptr. 3d 445, 452 (Cal. Ct. App. 2014) (linking equitable conversion to specific performance); *Southport Congregational Church – United Church of Christ v. Hadley*, 128 A.3d 478, 485 (Conn. 2016) ("[T]he contract must be enforceable for equitable conversion to apply . . . ."); DOBBS, LAW OF REMEDIES § 4.3(8) (2d ed. 1993) ("[T]he equitable conversion doctrine holds that when parties enter into a sales contract that is subject to specific performance, the equity court will regard the seller as a kind of trustee. He holds legal title, but only for the purpose of performing the contract by conveying to the buyer.").

¶14 The "capable of specific enforcement" requirement also reflects the parties' intent. It cannot be said that the parties intended for equitable title to pass to the buyer if the buyer couldn't specifically enforce the contract. *See, e.g.*, *Southport Congregational Church*, 128 A.3d at 485 ("[T]he contract must be enforceable for equitable conversion to apply; otherwise, it cannot be said that the parties intended for title to pass to the buyer at execution."). "[A]nd equity can hardly regard that as presently done which the parties to a contract have agreed shall be done only in the future." *Anderson v. Yaworski*, 181 A. 205, 207 (Conn. 1935).

¶15 The fact that a buyer may have contractual damage remedies or the ability to cancel the contract does not necessarily negate the possibility of equitable conversion, especially where real property is at interest. Specific performance, as with any equitable

remedy, is only appropriate where "damages are inadequate and . . . equitable relief will result in more perfect and complete justice." *Thurston v. Box Elder Cty.*, 892 P.2d 1034, 1040 (Utah 1995). But "[r]ealty has always been held to be unique," *Eckard v. Smith*, 527 P.2d 660, 661 (Utah 1974), and in the case of the sale of land, "the inadequacy of the legal remedy is well settled," *Cummings v. Nielson*, 129 P. 619, 624 (Utah 1912) (citation omitted). Further, to limit Call Center to its contractual remedies of rescinding the agreement and receiving a return of its earnest money deposit would be to subvert the contracting parties' express intent to permit Call Center to seek specific performance. *See Kelley v. Leucadia Fin. Corp.*, 846 P.2d 1238, 1242 (Utah 1992). And if Call Center's sole remedy was to rescind the agreement, CBC would be able to breach the contract with impunity.[1] *Id.*

¶16 SMS argues that our result today would allow a judgment debtor to enter into an escrow agreement and leave it open indefinitely, thus effectively defeating a judgment creditor's lien rights. But, as we've previously noted, "[t]he need to enforce judgments is not so great that a lien must attach to property in the process of being transferred and to which [a seller's] rights are contractually limited." *Cannefax*, 818 P.2d at 550. And, there are three reasons we don't share SMS's concern that our holding will create a loophole around judgment liens.

¶17 First, we're only concluding that equitable conversion operates to protect the buyer's interests in the land from a seller's creditors when a buyer ultimately closes on a land sale contract. "When we speak of conversion we are not describing a condition of the property for all purposes with respect to everybody but are giving a name to a situation resulting from the application of equitable doctrines to a state of facts between certain parties." *First Sec. Bank of Idaho, Nat'l Ass'n v. Rogers*, 429 P.2d 386, 389 (Idaho 1967) (quoting Roscoe Pound, *The Progress of the Law 1918–1919*, 33 HARV. L. REV. 813, 831 (1920)). We do not decide what rights in the property, if any, a seller may retain to which a judgment creditor

---

[1] This is not, of course, to say, that the parties couldn't contractually limit the buyer's remedy to rescinding the agreement or exclude specific performance as a remedy. *See Kelley v. Leucadia Fin. Corp.*, 846 P.2d 1238, 1242–43 (Utah 1992). But, we'll not create such restrictions for the parties when they've not done so for themselves. *Id.*

may attach. Nor do we decide what rights in the property, if any, a buyer has to which a buyer's judgment creditor could attach.[2] We're also not faced with facts like those in *Ocean Avenue*, where the buyer ultimately failed to close on the property, and we don't decide whether equitable conversion would apply in such a scenario. 173 Cal. Rptr. 3d at 452.

¶18 Second, courts need not apply equitable conversion in cases where a contract is "a sham" or the parties "were in cahoots." *In re Hodes*, 402 F.3d 1005, 1014 (10th Cir. 2005). "Utah courts have long recognized that 'he who seeks equity must do equity.'" *Hill v. Estate of Allred*, 2009 UT 28, ¶ 22, 216 P.3d 929 (citation omitted).

¶19 Finally, a judgment creditor isn't without other remedies. If the parties entered the land sales contract with the intent of defrauding the seller's creditors, the creditors have rights under Utah's Uniform Voidable Transactions Act. UTAH CODE §§ 25-6-101 through -502. Additionally, nothing in this opinion "prevent[s] the judgment creditor from reaching the [seller's] interest in the property," such as by garnishing the purchase price or "by executing on the [seller's] interest in the contract." *Cannefax*, 818 P.2d at 550.

¶20 While not material to our decision, we note that, ironically, the rule SMS asks us to reach would place its interests above the buyer and previous judgment creditors who settled their interests and would produce an inequitable result. "[A] judgment lien has no greater dignity in property law than the nature of the property interest to which it attaches." *Butler*, 740 P.2d at 1257. Had SMS recorded its judgment lien before CBC entered into the REPC, SMS's

---

[2] In *Butler v. Wilkinson*, we determined that a vendee had an equity interest in the "appreciated value of the property over the contract purchase price as long as his or her interest has not been forfeited" to which a buyer's creditor could attach a lien. 740 P.2d 1244, 1256 (Utah 1987). And we noted that a vendee "rescind[ing] the contract under which his equitable interest arises does not . . . extinguish creditors' judgment liens that attached during the vendee's ownership of the equitable interest." *Id.* at 1257–58. We're not presented with a judgment lien attached by the buyer's creditors in this case. Thus, we don't decide if a buyer has an equity interest in the property to which a buyer's creditor could attach, especially in circumstances where the buyer ultimately fails to close on the contract.

lien would have been junior to four other liens—liens which were still unsatisfied by over $3,000,000 even after applying the entire REPC purchase price. There's no scenario in which SMS would have been able to realistically recover any money through a lien on the property. CBC and Call Center dealt with the four other lien holders, successfully negotiating away those encumbrances with the purchase price of the REPC. Call Center could in good faith rely on the holding in *Lach* to determine that SMS had no interest in the property which needed to be addressed when negotiating away the current encumbrances. SMS asks us to allow it to attach to Call Center's interest in the land, now free from the other more senior encumbrances which would have effectively prevented its recovery. That is anything but an equitable result.

¶21 Based upon the equitable considerations, and the policies and maxim underlying the doctrine of equitable conversion, we conclude that the doctrine of equitable conversion operates to protect a buyer's interests in the land from the seller's creditors from the time the land sales contract becomes capable of specific enforcement by the buyer. This decision is in keeping with this court's prior decisions, courts across the country, and the intent of the parties.

## II. UNFULFILLED BUYER-FRIENDLY CONDITIONS DO NOT PRECLUDE THE OPERATION OF THE DOCTRINE OF EQUITABLE CONVERSION

¶22 Equitable conversion recognizes that, once a contract is specifically enforceable by the buyer, "title is effectively held for the benefit of the [buyer], to whom it will pass *if the contract is carried out*." *Cannefax v. Clement*, 818 P.2d 546, 550 (Utah 1991) (emphasis added); *see also Estate of Willson v. State Tax Comm'n*, 499 P.2d 1298, 1300 (Utah 1972) (noting that equitable conversion applies "pending the completion of an enforceable executory contract for the sale of real estate"); *In re Hodes*, 402 F.3d 1005, 1012 (10th Cir. 2005) (The "equitable conversion doctrine . . . is anticipatory; it gets a jump on reality by imagining the conversion . . . in advance. The seller is obliged in equity to convey [the realty at issue] in exchange for the price, so he is treated as if he already had." (alterations in original) (quoting DOBBS, LAW OF REMEDIES § 4.3(8) (2d ed. 1993))). This is not thwarted if the ultimate transfer of legal title is dependent upon "an event which is completely out of the hands of the [seller]." *Cannefax*, 818 P.2d at 549; *see also Estate of Willson*, 499 P.2d at 1300 (noting equitable conversion applied to a seller's interest where "the transfer of legal title and record title [was] dependent only upon the acts and conduct of the buyer"). In reality, equitable title is merely "a right

possessed by a person to have the legal title to property transferred to him upon the performance of specified conditions." *Citizens Nat'l Bank of Kirksville, Mo. v. Comm'r*, 122 F.2d 1011, 1014 (8th Cir. 1941) (citation omitted).

¶23 SMS argues that equitable conversion would be inappropriate in this case because yet-to-be fulfilled conditions in the REPC precluded Call Center from seeking specific performance. Specifically, SMS points to unfulfilled terms in the REPC at the time the judgment lien was filed that required that the parties do the following: CBC to provide seller disclosures; Call Center to complete buyer undertakings and additional due diligence; Call Center to approve the seller disclosures, buyer undertakings, and additional due diligence; Call Center to conduct a final walk-through; and CBC to convey title free of encumbrances. But contractual conditions can be waived by the benefitted party and do not prevent specific performance. *Eliason v. Watts*, 615 P.2d 427, 430 (Utah 1980). With the exception of the buyer undertakings and the duty to convey title, the conditions SMS raises were expressly for the benefit of, or waivable by, Call Center. Although alleged buyer undertakings in the REPC were "for the benefit of both the Buyer and the Seller," none of the optional buyer undertaking checkboxes were selected on the REPC. And the requirement to convey clear title wasn't a condition to CBC's performance, but a covenant for which CBC could be sued for failure to perform. *See Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 19, 367 P.3d 994; *see also Kelley v. Leucadia Fin. Corp.*, 846 P.2d 1238, 1242 (Utah 1992) ("Specific performance with an abatement in the purchase price has long been recognized as an appropriate remedy when a seller refuses to convey.").

¶24 SMS also contends that Call Center wasn't entitled to specific performance when SMS recorded its judgment lien because Call Center hadn't yet tendered the purchase price. This isn't the law in Utah. "It is well-settled that a party who purchases property under an executory real estate contract obtains a recognizable interest in the property before the contract is paid in full." *Pioneer Builders Co. of Nev. v. K D A Corp.*, 2012 UT 74, ¶ 81, 292 P.3d 672. And while a party must be prepared to tender performance in order to be entitled to specific performance, *see Kelley*, 846 P.2d at 1243,

we've been presented with no evidence that Call Center wasn't prepared to complete performance.[3]

**CONCLUSION**

¶25 We hold that CBC's performance wasn't subject to any conditions that would preclude Call Center from seeking specific performance. Call Center could, at its option, seek to enforce the REPC through an action for specific performance. Thus, Call Center's interests are protected by the doctrine of equitable conversion from SMS's judgment lien.

¶26 Based on the principles and maxim underlying the doctrine of equitable conversion, we hold the doctrine of equitable conversion operates to protect the buyer's interests in the property from the seller's creditors once the contract for the sale of land becomes capable of specific enforcement by the buyer. The decision of the district court is affirmed.

––––––––––––

[3] Call Center did tender complete performance on March 28, 2013 when Call Center closed on the property.