Filed 11/18/20  PanIQ Group LLC v. Rivera Family Restaurant LLC CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PANIQ GROUP LLC et al., | D076141 |
| Plaintiffs, Cross-defendants and Appellants, | |
| v. | (Super. Ct. No. 37-2015-00041289-CU-FR-CTL) |
| RIVERA FAMILY RESTAURANT, LLC, | |
| Defendant, Cross-complainant and Respondent; | |
| CAPITAL REAL ESTATE VENTURES, INC., | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Affirmed.


Cabanday Law Group and Orlando F. Cabanday for Plaintiffs, Cross-defendants and Appellants Paniq Group LLC and Cris Parker.

Higgs Fletcher & Mack, John Morris, Rachel Moffitt Garrard; Connolly Law Office and Christopher J. Connolly for Defendant, Cross-complainant and Respondent Rivera Family Restaurant, LLC, and Capital Real Estate Ventures, Inc., Defendant and Respondent.

# I

# INTRODUCTION

In this commercial landlord-tenant dispute, plaintiff and cross-defendant PanIQ Group, LLC (PanIQ) and cross-defendant Cris Parker appeal a judgment entered in favor of defendant and cross-complainant Rivera Family Restaurant, LLC (Rivera) and defendant Capital Real Estate Ventures, Inc. (Capital).

PanIQ, as lessee, entered a five-year commercial lease with Rivera, as lessor, for a basement space in a building in downtown San Diego. Capital served as Rivera's real estate broker in the transaction and Parker guaranteed PanIQ's performance under the lease. Approximately five months into the lease, PanIQ terminated the lease. Thereafter, it filed causes of action against Rivera and Capital for breach of the lease, fraud, and negligent misrepresentation, and Rivera filed a cross-complaint against PanIQ and Parker for breach of the lease and breach of the guaranty. After a bench trial, the trial court found in favor of Rivera and Capital and against PanIQ and Parker on all causes of action.

PanIQ and Parker urge us to reverse the judgment as to PanIQ's fraud causes of action and Rivera's cross-complaint. They assert the trial court erroneously excluded evidence showing that Rivera was not the true owner of the leased premises. Further, they claim the court erred in finding the lease was an enforceable contract for purposes of Rivera's cross-complaint.

2

We conclude there is no merit to the contentions raised by PanIQ and Parker. Therefore, we affirm the judgment.

## II

## BACKGROUND

### A

PanIQ is a subsidiary of a company that owns and operates escape rooms. An escape room is a form of entertainment in which participants are put into a themed room (e.g., an insane asylum) and try to solve a series of puzzles within an allotted time to exit (or "escape") the room. In early 2015, PanIQ began preparations to open an escape room location in San Diego.

PanIQ scouted multiple sites for its escape room location and selected a 2,400-square foot space available for lease in the basement of the Woolworth Building in downtown San Diego. Rivera, the lessor of the basement space, was in escrow to buy the Woolworth Building from its then-owner, Scott Williams, as trustee of the Williams Revocable Family Trust (Williams). On May 29, 2015, PanIQ and Rivera entered a five-year commercial lease for the basement space, effective June 1, 2015.

### B

PanIQ took possession of the leased space on June 1, 2015, and began to make tenant improvements including the construction of partition walls for the escape rooms. The lease required PanIQ to materially comply with applicable building codes, laws, regulations, and ordinances when making its tenant improvements. Further, it required PanIQ to furnish to Rivera, upon request, all permits, documents, and information evidencing PanIQ's compliance with the applicable building codes, laws, regulations, and ordinances.

3

On June 11, 2015, Williams—the seller of the Woolworth Building—visited the building, identified himself to PanIQ's on-site general contractor as the building owner, and asked that PanIQ halt its tenant improvements and vacate the premises. In subsequent communications, Williams told PanIQ that Rivera would become the building owner in one week (after the close of escrow) and it would be "best for all concerned" if there were no further tenant improvements until then. PanIQ stopped work on its tenant improvements and vacated the premises.

Soon after, representatives from PanIQ and Capital, Rivera's broker, met to discuss PanIQ's ouster from the premises. During and after the meeting, PanIQ expressed concerns the ouster would delay its construction plans and the opening of its escape rooms. Capital, on behalf of Rivera, offered to rescind the lease and refund PanIQ's deposit and prepaid rent. PanIQ declined the offer. After some negotiation, the parties agreed Rivera would provide PanIQ a rent reduction as compensation for the ouster.

Escrow for the Woolworth Building closed and PanIQ regained possession of the leased space on June 19, 2015, eight days after it was ousted. PanIQ opened for business in the leased space in July 2015.

C

PanIQ operated its escape room location in the Woolworth Building and made monthly rent payments through November 2015. In early November 2015, Randy Rivera (Randy), the manager of Rivera, met with representatives from PanIQ to discuss lease-related matters and certain complaints PanIQ had about the leased space. Among other issues, they discussed a potential reconfiguration of the leased space, the construction of code-compliant improvements and a restroom in the basement, the presence of homeless persons near the building, and a leak on or near the premises.

4

According to Randy, he exited the meeting believing the parties "were moving forward" on addressing PanIQ's concerns and a possible renegotiation of the lease.[1]

Approximately a week after the November meeting, a building inspector from the City of San Diego (City) visited the Woolworth Building to inspect a tenant improvement for an upstairs tenant. During his visit, he noticed PanIQ's tenant improvements in the basement and determined they required permits. The inspector posted an on-site correction notice indicating that the City's records showed there were no building permits for PanIQ's tenant improvements, demanding that all necessary permits be obtained, and warning that noncompliance would result in removal of the tenant improvements.

Rivera forwarded a copy of the correction notice to PanIQ's founder, requested that PanIQ furnish permits for the tenant improvements, and warned that the City would not allow operation of an unpermitted business. After some discussion, Rivera sent a proposal to PanIQ to renegotiate the lease and address the permitting issues. Under Rivera's proposal, Rivera would assume responsibility for paying for, permitting, and building code-compliant tenant improvements in the basement if, in return, PanIQ would agree to a reconfiguration of the leased space and an extension of the lease from five years to 10 years.

On November 24, 2015, PanIQ rejected Rivera's offer, informed Rivera that Rivera was in material breach of the lease due to its alleged "failure to comply with its obligations," and terminated the lease. PanIQ thereafter vacated the premises and stopped making its monthly rental payments.

---

[1]    A lease provision required Rivera to install a restroom in the basement.

5

## D

On December 11, 2015, PanIQ filed a complaint against Rivera alleging causes of action for fraud and breach of the lease. It alleged Rivera made misrepresentations to PanIQ prior to the signing of the lease, including that Rivera was the owner of the leased space and that it intended to satisfy its lease obligations. According to PanIQ, Rivera was not the true owner of the leased space; rather, it used the lease with PanIQ to secure the financing necessary to buy the Woolworth Building from Williams. PanIQ also alleged Rivera breached the lease by not constructing a restroom in the leased space, failing to maintain the property, and shutting off PanIQ's electricity.

Rivera cross-complained against PanIQ for breach of the lease. It alleged PanIQ breached the lease by constructing unpermitted tenant improvements in violation of the City's building code, stopping its rent payments after November 2015, and abandoning the leased space. Rivera also cross-complained against Parker, one of PanIQ's members who had executed a guaranty pledging PanIQ's performance under the lease.

In August 2017, PanIQ filed a separate complaint against Capital alleging causes of action for fraud and negligent misrepresentation. It alleged Capital misrepresented that Rivera was the owner of the property at the time the lease was executed and, furthermore, that Rivera intended to satisfy its lease obligations. The trial court consolidated the two cases in September 2017.

The consolidated action proceeded to a bench trial after which the court found in favor of Rivera and Capital and against PanIQ and Parker on all causes of action. With respect to PanIQ's fraud causes of action, the court found PanIQ failed to establish a false representation regarding the ownership of the Woolworth Building. The court found Rivera and Capital

6

"were upfront early in the negotiations for the [l]ease that [Rivera] was in an open transaction to buy the Woolworth Building" and "no one from Rivera … or Capital … represented the transaction had closed." Further, the court found PanIQ failed to establish any causal link between any alleged misrepresentations and any claimed damages.

The court found in favor of Rivera and Capital on PanIQ's breach of lease cause of action on grounds that PanIQ did not establish its own performance under the lease. The court determined that PanIQ materially breached the lease on the date it took possession of the leased premises by constructing unpermitted tenant improvements in violation of the City's building code. As an alternative basis for denying recovery, the court found PanIQ failed to establish that Rivera materially breached any provision of the lease or the existence of a causal link between any alleged breach and PanIQ's claimed damages.

As for Rivera's cross-complaint, the court found PanIQ materially breached the lease and Parker was jointly and severally liable under the guaranty. The court rejected a contention raised by PanIQ that the lease was void due to Rivera and Capital's alleged misrepresentations concerning Rivera's ownership of the Woolworth Building. It found PanIQ failed to establish any misrepresentations and, to the extent any misrepresentations occurred, PanIQ ratified the lease by rejecting Rivera's offer to rescind the lease in June 2015. Further, the court found PanIQ materially breached the lease by: (1) constructing unpermitted tenant improvements; (2) violating applicable building code requirements; and (3) failing to pay rent after November 2015.

The court denied recovery to PanIQ and awarded Rivera $251,084 in lost rent and $8,800 in out-of-pocket expenses.

7

## III

## DISCUSSION

### A

### *Fraud*

PanIQ contends we should reverse the judgment as to PanIQ's fraud causes of action due to an alleged evidentiary error. As we will explain, PanIQ's assertion of an evidentiary error is based on a mischaracterization of the record. Because the record demonstrates the trial court did not in fact rule in the manner PanIQ claims, PanIQ has failed to establish that the judgment must be reversed as to the fraud causes of action.

Prior to trial, Rivera filed a motion in limine to exclude evidence that it was not the owner of the leased premises. Rivera argued such evidence would violate the conclusive presumption codified in Evidence Code section 624, which provides that "[a] tenant is not permitted to deny the title of his landlord at the time of the commencement of the relation." Alternatively, Rivera claimed the evidence would be irrelevant, unduly prejudicial, and unduly time-consuming because Rivera had equitable title to the leased premises when the parties executed the lease. (See *Ocean Avenue LLC v. County of Los Angeles* (2014) 227 Cal.App.4th 344, 352.)

At the hearing on Rivera's motion in limine, the trial court ruled as follows: "I'm inclined to grant [the motion]. [¶] ... [¶] ... I think we need to get into the evidence." The court continued: "I'm just saying I don't want to decide it as a motion in limine. [¶] ... [¶] [I]n other words, you make your argument[s], you guys make your argument[s], and I'll determine it .... [¶] ... [¶] It's granted. I'm not [going to] make a finding. I'm just saying you guys argue and I'll make a ruling. [¶] I'm not saying you can't make your argument. I'm saying I'm not making a pretrial motion [*sic*] on this issue.

8

I'm not deciding this as a matter of law right now. I want to hear the evidence and the arguments and then I'll make a ruling."

Based on the foregoing, PanIQ contends the trial court granted Rivera's motion in limine and precluded PanIQ from introducing evidence that Rivera was not the owner of the leased premises. PanIQ asserts the court erred in doing so because the conclusive presumption codified in Evidence Code section 624 is subject to an exception when a lessor commits fraud to induce a lessee to enter a lease. (See *Sands v. Eagle Oil & Refining Co.* (1948) 83 Cal.App.2d 312, 321–322.) PanIQ claims it suffered prejudice from the alleged evidentiary error because it was effectively precluded from establishing its causes of action for fraud.

Capital, in an argument joined by Rivera, argues PanIQ distorts the appellate record. It asserts the court did not in fact grant the motion in limine or preclude PanIQ from introducing evidence of the alleged fraud. Further, it claims the court permitted both sides' witnesses to testify extensively about alleged representations Rivera and Capital made to PanIQ regarding its ownership of the Woolworth Building and, based on all the evidence presented, rendered a factual finding that no misrepresentations were made. We agree with Capital and Rivera.

The ruling on Rivera's motion in limine was not the model of clarity. As noted, the court indicated it would "grant" the motion, which, standing alone, would suggest the court would exclude evidence pertaining to Rivera's ownership of the Woolworth Building. But a review of the ruling in context makes it readily apparent the court denied the motion in substance. The court opined it needed "to get into the evidence" and both sides would be permitted to make arguments regarding Rivera's ownership of the premises. Further, the court opined it would not make a pretrial finding on the issue of

9

ownership or decide the matter through an in limine ruling. When read in context, it is clear the court simply misspoke when it stated it would "grant" Rivera's motion in limine.

To the extent there was any ambiguity in the in limine ruling, that ambiguity was resolved at trial when the court freely permitted the parties to introduce evidence pertaining to the alleged fraud. As Capital correctly notes, the court allowed witnesses for both sides to testify at length regarding Rivera and Capital's alleged representations to PanIQ about Rivera's ownership of the Woolworth Building, the pending sale of the Woolworth Building from Williams to Rivera, and the timing and terms of escrow.

To take one example (of several dozen), a witness who set up PanIQ's business operation in San Diego testified that representatives from Rivera and Capital told him Rivera was "in the process of acquiring the property from someone," but "would be the real owner by the time [the parties] signed the lease agreement." He testified PanIQ "would not have signed the lease" if it knew Rivera was "not the owner of the property on the day PanIQ signed the lease …."

By contrast, an employee of Capital testified he disclosed to PanIQ, just before the parties signed the lease, that the property was still in escrow and that he made no representations to PanIQ about who owned title to the property. Another employee of Capital testified he told PanIQ "it was in escrow" and denied telling PanIQ that Rivera was the owner of the property. Additionally, Randy testified that Rivera had paid a nonrefundable deposit on the Woolworth Building and removed contingencies on the property, thus allowing Rivera to seek tenants for the basement space even though escrow had not yet closed.

10

As these illustrative examples demonstrate, the trial court did not prohibit the parties from introducing evidence pertaining to Rivera's alleged ownership of the Woolworth Property, nor did it preclude PanIQ from presenting evidence to support its allegations of fraud. Rather, the court admitted extensive evidence on these topics and, based on all the evidence before it, rendered factual determinations that Rivera and Capital "were upfront early in the negotiations for the [l]ease that [Rivera] was in an open transaction to buy the Woolworth Building" and "no one from Rivera … or Capital … represented the transaction had closed."[2]

Because the trial court did not exclude evidence concerning Rivera's ownership of the Woolworth Building, we conclude PanIQ and Parker have not established a reversible evidentiary error.

B

*Breach of the Lease and Breach of the Guaranty*

Next, PanIQ and Parker contend we should reverse the judgment as to Rivera's cross-complaint for breach of the lease and breach of the guaranty. They contend the lease was a "nullity" due to the allegedly fraudulent representations Rivera and Capital made to PanIQ regarding Rivera's ownership of the leased premises. Although PanIQ declined Capital's offer to rescind the lease (opting instead to accept a rent reduction), PanIQ contends it never ratified the lease—and could not have ratified the lease—because the lease was void at its inception. We are not persuaded by these arguments.

As Rivera and Capital correctly note, the trial court rendered factual findings that "Pan[IQ] … failed to show a false representation was made with

---

[2] The trial court sustained a handful of objections to questions regarding whether Rivera had "legal" (as opposed to "equitable") title when the parties signed the lease, reasoning that such questioning called for legal conclusions. PanIQ has not challenged these rulings on appeal.

11

respect to the ownership of the Woolworth Building," "no one from Rivera …
or Capital … represented the transaction had closed," PanIQ "was made
aware of the facts[] which it claims were misrepresentations made by
[Rivera]," and "[t]here were no material misrepresentations of fact concerning
[Rivera]'s ability to [l]ease the [p]remises at issue …." PanIQ and Parker
have not challenged the sufficiency of the evidence supporting these
determinations. Given these unchallenged findings, PanIQ and Parker have
failed to establish that Rivera and Capital engaged in fraud.

Even if we were to accept the premise of PanIQ and Parker's
argument—that Rivera and Capital committed fraud—the asserted fraud
would, at most, render the lease voidable, not void. "California law
distinguishes between fraud in the 'execution' or 'inception' of a contract and
fraud in the 'inducement' of a contract. In brief, in the former case ' "the
fraud goes to the inception or execution of the agreement, so that the
promisor is deceived as to the nature of his act, and actually does not know
what he is signing, or does not intend to enter into a contract at all, mutual
assent is lacking, and [the contract] is *void*. In such a case it may be
disregarded without the necessity of rescission." ' " (*Rosenthal v. Great
Western Financial Securities Corp.* (1996) 14 Cal.4th 394, 415 (*Rosenthal*).)

"Fraud in the inducement, by contrast, occurs when ' "the promisor
knows what he is signing but his consent is *induced* by fraud, mutual assent
is present and a contract is formed, which, by reason of the fraud, is *voidable*.
In order to escape from its obligations the aggrieved party must *rescind* …." ' "
(*Rosenthal, supra,* 14 Cal.4th at p. 415.) "Despite its defects, a voidable
transaction, unlike a void one, is subject to ratification by the parties."
(*Safarian v. Govgassian* (2020) 47 Cal.App.5th 1053, 1067 (*Safarian*); see
*Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 810 ["[A]

12

voidable contract or assignment is one that the parties to it may ratify and thereby give it legal force and effect...."].)

It is uncontested that PanIQ freely and intentionally executed the lease. Further, PanIQ was aware of the material terms of the lease—i.e., that it was a five-year commercial lease for basement space in the Woolworth Building. Given these uncontested facts, we have no trouble concluding that mutual assent existed and the alleged misrepresentations, at most, constituted fraud in the inducement. (*Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 402–403 [" ' " '[W]here the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable.' " ' "].) Therefore, the alleged fraud would merely render the lease voidable, subject to ratification by the parties. (*Safarian*, *supra*, 47 Cal.App.5th at p. 1067.)

The trial court found PanIQ ratified the lease, a finding that is amply supported by substantial evidence in the record. PanIQ's witnesses testified they learned Rivera did not own title to the Woolworth Building on June 11, 2015, when Williams appeared on-site and requested that PanIQ halt its tenant improvements and vacate the premises. Witnesses for both sides testified that Capital, on behalf of Rivera, thereafter offered to rescind the lease and refund PanIQ's deposit and prepaid rent. But PanIQ—with full knowledge that escrow had not closed—declined the offer. Instead, it elected to accept a rent reduction, retook possession of the leased premises, and accepted the benefits of the lease for another five months. Thus, even if Rivera and Capital committed fraud in the inducement, substantial evidence supported the trial court's determination that PanIQ ratified the lease.

13

Based on the foregoing, we conclude PanIQ and Parker have not established that the lease was void or otherwise without legal effect.[3] Therefore, they have not demonstrated reversible error as to the portion of the judgment concerning Rivera's cross-complaint.

IV

DISPOSITION

The judgment is affirmed. Rivera and Capital are entitled to their costs on appeal.

McCONNELL, P. J.

WE CONCUR:


BENKE, J.


GUERRERO, J.

---

[3]    Because the trial court did not err in finding the written lease valid, we do not address the parties' arguments regarding whether Rivera and PanIQ entered an oral or implied lease and, if so, whether the Statute of Frauds barred enforcement of the oral or implied lease.

14