**2018 UT App 191**

# THE UTAH COURT OF APPEALS

WASATCH COUNTY,
Petitioner,

*v.*

UTILITY FACILITY REVIEW BOARD
AND ROCKY MOUNTAIN POWER,
Respondents.

Opinion
No. 20160523-CA
Filed October 4, 2018

Original Proceeding in this Court

Scott H. Sweat and Tyler J. Berg, Attorneys
for Petitioner

Sean D. Reyes and Brent A. Burnett, Attorneys
for Respondent Utility Facility Review Board

D. Matthew Moscon, R. Jeff Richards, Heidi K.
Gordon, Attorneys for Respondent Rocky
Mountain Power

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

MORTENSEN, Judge:

¶1     Rocky Mountain Power (Rocky Mountain) sought a
conditional use permit from Wasatch County in order to erect
transmission towers and lines, but Wasatch County denied the
permit.[1] The Utility Facility Review Board (the Board) thereafter

---

1. We issued an opinion in this case on January 5, 2018. *See*
*Wasatch County v. Utility Facility Review Board*, 2018 UT App 1,
414 P.3d 958. After a petition for rehearing was filed, we

(continued…)

ordered Wasatch County to issue the permit. Wasatch County sought a stay from the Board, which was denied. Wasatch County then issued the conditional use permit and the power transmission towers were constructed. Wasatch County did not seek a stay from this court, nor did it delay issuance of the permit or otherwise seek to stop the construction. Under the circumstances of this case, we conclude that this proceeding for judicial review has been rendered moot and, therefore, we dismiss it.

BACKGROUND

¶2     Rocky Mountain obtained an easement over property (the Property) owned by Promontory Investments LLC (Promontory). The Property sits in both Summit and Wasatch counties. Prior to the events giving rise to this case, Rocky Mountain's transmission line ran through a portion of the Property located entirely within Summit County.

¶3     Rocky Mountain supplies power to one of the fastest-growing regions of Utah, of which Summit and Wasatch counties are part. Based on projected growth of the region, Rocky Mountain has undertaken an ongoing project to increase transmission capacity and create alternative transmission pathways (the Project). Part of the Project requires building a sixty-seven-mile transmission line. Only 0.26 miles of the proposed line would sit in Wasatch County, on Promontory's land.

---

(…continued)

reconsidered that opinion and did not release it for publication. Our previous opinion is therefore withdrawn, and we issue this opinion in its place.

¶4     The changed location—from the previous transmission line location in Summit County to the new location in Wasatch County—resulted from a request by Promontory after Rocky Mountain approached it about upgrading the current transmission line to a higher capacity one. Promontory asked Rocky Mountain "to consider alternative siting locations on" the Property. It is Rocky Mountain's practice to accommodate such a request from landowners, provided the landowner pays the cost of relocation and the new location is acceptable to Rocky Mountain. Accordingly, Rocky Mountain and Promontory considered five alternative locations for the transmission line. Promontory agreed to grant a new easement and pay additional costs associated with constructing the new line in Promontory's preferred location along the south and east perimeters of the Property—including the 0.26 miles of Wasatch County land. The agreement between Promontory and Rocky Mountain included a provision stating that if Rocky Mountain were unable to obtain necessary permits, it could terminate the agreement and leave the transmission line in its then-current location.

¶5     In its quest to obtain authorization for the construction of the transmission line segment located in Wasatch County (the Segment), Rocky Mountain was in frequent contact with Wasatch County officials, planning staff, and nearby property owners. Wasatch County consistently expressed concern about the Segment's compliance with existing ordinances aimed at limiting structures that protrude above the visual ridgeline. In its application for a conditional use permit,[2] Rocky Mountain "included four options for the proposed alignment of the transmission line in Wasatch County." The Wasatch County

---

2. Rocky Mountain submitted multiple applications for conditional use permits, which were withdrawn or continued for a variety of reasons. We are concerned only with the final of these applications, filed in September 2015.

Planning Commission (the Planning Commission) denied the permit, concluding that none of the four options were acceptable, as "there was no way to mitigate the impacts of [the Segment] on neighboring properties."

¶6 Rocky Mountain appealed the denial of the permit to the Wasatch County Board of Adjustment (the Board of Adjustment), which agreed with the Planning Commission. The Board of Adjustment concluded that the proposed transmission upgrade violated Wasatch County's ridgeline ordinance and likewise denied the permit.

¶7 Rocky Mountain then appealed to the Board, which determined that the Segment was "needed to provide safe, reliable, adequate, and efficient service" to Rocky Mountain customers and ordered Wasatch County to issue the permit within sixty days.

¶8 Wasatch County asked the Board for a stay of its order. After the Board denied the request, Wasatch County issued the conditional use permit to Rocky Mountain.[3] Wasatch County then sought judicial review of the Board's order in this court, but did not ask this court for a stay of that order pending the outcome of judicial review.[4] After briefing and oral argument

---

3. The conditional use permit contained conditions requiring that: (1) tangent poles must be wood, if feasible; (2) poles were to be designed to be as low as possible while maintaining industry-standard spans and clearances; (3) "rust colored (cor-ten) metal" poles were to be used at corner locations to avoid the use of guy wires; and (4) conductors were required to be "non-specular." In the process of installing the transmission lines, Rocky Mountain complied with these conditions.

4. Rule 17 of the Utah Rules of Appellate Procedure states in pertinent part, "Application for a stay of a decision or order of

(continued…)

before this court, we issued a decision and the Board filed a petition for rehearing. In the briefing associated with the petition for rehearing, the parties informed this court—for the first time—that while the proceeding for judicial review had been pending, the conditional use permit had been issued, the new transmission lines had been constructed on the Segment, and the lines were now in use. This court then ordered supplemental briefing.

¶9 The supplemental briefing makes clear that the remedy Wasatch County seeks is a determination that the conditional use permit be rescinded and that the transmission towers be dismantled and moved.

## ANALYSIS

¶10 In our view, Wasatch County's requested remedy is no longer available, and therefore the dispute has been rendered moot.

### I. Mootness

¶11 "A case may be mooted on appeal if the relief requested is rendered impossible or of no legal effect." *Transportation All. Bank v. International Confections Co., LLC*, 2017 UT 55, ¶ 15, 423 P.3d 1171 (cleaned up). In *Transportation Alliance*, our supreme

---

(…continued)

an agency pending direct review in the appellate court shall ordinarily be made in the first instance to the agency if the agency is authorized by law to grant a stay. If a motion for such relief is made to the appellate court, the motion shall show that application to the agency for the relief sought is not practicable, or that application has been made to the agency and denied, with the reasons given by it for denial."

court held that an appeal was moot because a debtor failed to seek a stay of an order approving a receivership sale. *Id.* ¶¶ 16–17. The bank filed a complaint alleging breach of a loan agreement and sought appointment of a receiver. *Id.* ¶ 2. Several creditors of one of the defendants, International Confections, intervened. *Id.* ¶ 3. The district court appointed a receiver, with power to sell the assets of International Confections. *Id.* ¶ 4.

¶12 The bank settled its claims against International Confections, and the district court dismissed the claims between the bank and International Confections, but ordered that the receiver stay in place. *Id.* ¶¶ 5–6. The receiver then accepted an offer to buy International Confections' assets. *Id.* ¶ 7. The district court held an expedited hearing and approved the order of sale. *Id.* ¶ 8. The buyer paid the agreed-upon price and began using the assets. *Id.* ¶ 9. International Confections then filed a motion under rule 60 of the Utah Rules of Civil Procedure to "reactivate" the case and allow it to file an objection to the order approving the sale. *Id.* ¶ 11; *see* Utah R. Civ. P. 60(b). The district court denied the motion and International Confections appealed. *Id.* ¶ 11.

¶13 The Utah Supreme Court dismissed the appeal as moot because International Confections did not attempt to stay the operation of the order. *Id.* ¶¶ 17, 23. Because the stay was not sought, the court held that International Confections had allowed the buyer to acquire the assets and that action (or inaction) precluded the appellate court from granting the relief sought. *Id.* ¶ 17; *see also Kellch v. Westland Minerals Corp.*, 484 P.2d 726, 726 (Utah 1971) (dismissing an appeal as moot where, after stock was sold during the pendency of the appeal, "[n]o steps were taken by the defendants to stay the operation of the judgment, nor did they supply a supersedeas bond").

¶14 Similarly, in *Richards v. Baum*, 914 P.2d 719 (Utah 1996), our supreme court found the failure to obtain a stay material to the question of mootness. *Id.* at 722. In *Richards*, would-be real

estate purchasers sued to specifically enforce a real estate purchase contract, but the district court ruled against them. *Id.* at 720. The purchasers did not obtain a stay and the sellers sold the property to someone else. *Id.* The sellers then moved to dismiss an appeal by the would-be purchasers as moot. *Id.* With no stay sought, the Utah Supreme Court ruled that the case was moot because the desired relief could no longer be granted. *Id.* at 722. Although recognizing theoretically that a district court can convert a quiet title action into one for damages, the court nevertheless adopted the majority position taken throughout the country that such a conversion in remedy cannot occur on appeal.[5] *Id.* at 721.

¶15 The court in *Richards* cited several other courts in support of its holding, some of which parallel our case. For example, in *Masonry Arts, Inc. v. Mobile County Commission*, 628 So. 2d 334 (Ala. 1993), and *Westinghouse Electric Corp. v. Grand River Dam Authority*, 720 P.2d 713 (Okla. 1986), public contracts were awarded and the party that did not receive the contract sued. When a stay on appeal was not sought, each court deemed the appeal to be moot. *See Masonry Arts*, 628 So. 2d at 335; *Westinghouse Elec.*, 720 P.2d at 716.

¶16 Another case cited in *Richards* is *Wagner v. Boggess Coal & Supply Co.*, 94 N.E.2d 64 (Ohio Ct. App. 1950), which involved a court-ordered dissolution of a corporation. *Id.* at 66. No stay was sought, and the appeal was found to be moot. *Id.* Again,

---

5. In *Richards v. Baum*, 914 P.2d 719 (Utah 1996), our supreme court noted that "'if appellant[s] were seeking on this appeal to prevent the foreclosure sale, and because of their failure to obtain a stay of execution, the sale were legally carried out during the pendency of the appeal and the time for redemption had run, the appeal would be moot.'" *Id.* at 722 (quoting *Franklin Financial v. New Empire Development Co.*, 659 P.2d 1040, 1043 (Utah 1983)).

perhaps theoretically the dissolution could have been undone, but the court nonetheless determined the appeal was moot where the appealing party did not use available procedural tools to preserve the status quo.[6] *Id.*

¶17 Furthermore, our research has identified additional case law from other jurisdictions supporting a determination that the dispute between Wasatch County and the Board is moot. In *Nextel West Corp. v. Franklin County Board of Zoning Appeals*, No. 03AP-625, 2004 WL 1244339 (Ohio Ct. App. June 8, 2004), the appellate court dismissed an appeal as moot where a telecommunication facility was built without a stay being sought. *Id.* at *3–4. The Ohio court agreed with other courts that "where an appeal involves the construction of a building or buildings and the appellant fails to obtain a stay of execution of the [district] court's ruling and construction commences, the appeal is rendered moot." *Id.* at *3 (cleaned up); *see also J.R. Francis Constr. Co. v. Pima County*, 403 P.2d 934, 935 (Ariz. Ct. App. 1965) (dismissing an appeal as moot where a contractor sued after the county awarded a contract to another contractor because the work was completed by the time the appellate court decided the case and no stay was obtained); *In re Save the Pine Bush, Inc. v. Cuomo*, 606 N.Y.S.2d 818, 860 (App. Div. 1994)

---

6. We recognize that Wasatch County sought a stay from the Board. Courts, however, require parties to avail themselves of all opportunities to preserve the status quo. *See Town of Libertyville v. Moran*, 535 N.E.2d 82, 86 (Ill. App. Ct. 1989) (dismissing where the party appealed a jury award for a condemnation action but failed to protect its interest by moving for a stay); *Montana Power Co. v. Charter*, 568 P.2d 118, 119 (Mont. 1976) (where transmission towers and lines were completed, an appeal was determined to be moot where the court found "nothing in the record to indicate any further effort by the defendants to preserve the status quo pending disposition of this appeal").

(dismissing an appeal as moot where petitioners failed to seek a stay regarding a permit to operate a landfill).

¶18 Similarly, in *Smola v. Legeza*, No.2004-A0038, 2005 WL 3610480 (Ohio Ct. App. Dec. 29, 2005), the appellate court was faced with a suit where a neighbor appealed a determination by the board of zoning appeals to issue a zoning permit to a landowner for construction of a new structure. *Id.* at *1. The appellate court affirmed the district court's dismissal because, at the time of appeal, the structure had already been substantially constructed. *Id.* at *7. The appellate court stated that "when an appeal involves the construction of a building and the appellant fails to obtain a stay of execution of the [district] court's ruling, and construction commences, the appeal is rendered moot." *Id.*

¶19 Accordingly, abundant case law supports the proposition that once construction (of, for instance, buildings or power lines) has commenced, an appellant must avail itself of all avenues of preserving the pre-construction status quo or risk the construction rendering the appeal moot. Here, Rocky Mountain sought a conditional use permit so that it could construct the new transmission lines and towers. The Board issued the permit, and Wasatch County did not even seek, much less obtain, a stay from this court. As a result, the construction is complete and the presence of the completed power lines, coupled with Wasatch County's failure to seek a stay, has rendered this proceeding for judicial review moot.

## II. Unavailable Remedy

¶20 We also conclude that under the circumstances of this case, the specific remedy Wasatch County seeks—revocation of the conditional use permit—is simply unavailable. Wasatch County points to its county code, specifically Wasatch County Code 16.23.06(D), and asserts that the conditional use permit that it issued can be revoked and the transmission poles and lines currently supplying power to customers can yet be removed.

Wasatch County notes that the Planning Commission can revoke or modify a conditional use permit if it finds that the use permit was obtained by mistake of fact, misrepresentation, or fraud. However, Wasatch County does not point to any facts or allegations demonstrating that the conditional use permit here was obtained by mistake of fact, misrepresentation, or fraud. Accordingly, the county code provision on which Wasatch County relies is inapplicable, and these circumstances bolster our conclusion that this proceeding for judicial review has been rendered moot.

## CONCLUSION

¶21　The remedy Wasatch County seeks is no longer available, and, therefore, the proceeding for judicial review is dismissed as moot.

———————