**2024 UT App 109**

# THE UTAH COURT OF APPEALS

DAVID R. HARMAN,
Appellant,
*v.*
105 PARTNERS, LLC; ANTHONY M. THURBER; BREKKE R. FELT;
AND LORRAINE THURBER,
Appellees.

Opinion
No. 20220076-CA
Filed August 1, 2024

Fourth District Court, Provo Department
The Honorable Robert A. Lund
No. 210400689

J. Spencer Ball, Attorney for Appellant

D. David Lambert and Richard A. Roberts, Attorneys
for Appellees Anthony M. Thurber, Brekke R. Felt,
and Lorraine Thurber

Richard D. Flint and Angelica M. Juarez, Attorneys
for Appellee 105 Partners, LLC

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

TENNEY, Judge:

¶1 The dispute before us involves two competing real estate developers (David Harman and 105 Partners, LLC, respectively) each of whom signed an agreement to purchase the same property

from the same seller.[1] Through a set of circumstances set forth below, 105 Partners ended up with title to the Property. After this occurred, Harman sued both 105 Partners and the seller (Trust Defendants), raising a number of claims for relief.[2] The district court later dismissed all of Harman's claims, and it also awarded attorney fees to both 105 Partners and the Trust Defendants based on its conclusion that they had prevailed in the suit.

¶2    Harman now appeals both the dismissal of his suit and the award of attorney fees. For the reasons set forth below, we first reject the assertions of 105 Partners and the Trust Defendants that Harman's claims have become moot by recent events. Turning to the merits, we affirm the district court's dismissal of some, but not all, of the claims. We accordingly reverse in part, vacate the award of fees, and remand for further proceedings consistent with this opinion.

---

1. As discussed below, this appeal turns in some measure on a potential differentiation between one purchaser's attempt to purchase the land, the buildings on the land, or both. For simplicity, we'll refer to the land and the buildings collectively as the Property, differentiating between them as needed, and we'll likewise capitalize the word "property" in any quotation from the record that refers to the land and buildings in question.

2. Before the contested sale, the Property was owned by the Anthony Fernlund & Lorraine Thurber Trust (the Trust). In the suit at issue, Harman sued Anthony M. Thurber and Brekke R. Felt (who were the trustees of the Trust) and Lorraine Thurber (who was its beneficiary). For convenience, we'll refer to them collectively as the Trust Defendants.

BACKGROUND

*105 Partners and Harman Both Sign Contracts to Purchase the Property[3]*

¶3    The Property is comprised of two adjacent parcels of land in downtown Provo, Utah. In 2014, 105 Partners sought to obtain the Property so that 105 Partners could develop it. In August of that year, the Trust Defendants and 105 Partners signed an agreement that was titled "Contribution Agreement." Under its terms, the Trust Defendants and 105 Partners created a partnership under which the Trust Defendants would convey the Property to 105 Partners in exchange for some shares of interest in 105 Partners. The Contribution Agreement specified that title to the Property would be conveyed to 105 Partners after 105 Partners received approval from Provo City for a project plan and after 105 Partners acquired another nearby property. These conditions were not immediately fulfilled, however, so title to the Property was not conveyed at that time.

¶4    In 2015, the Trust Defendants and 105 Partners amended the Contribution Agreement, adding provisions under which the Trust Defendants would convey title to the Property to 105 Partners within 30 days. The parties made further amendments in 2017 that memorialized, among other things, an additional capital contribution from Cobble Way Holdings, LLC (Cobble Way), which was a "substantial partner" in the development plans for the Property. Despite the terms of the 2015 amendment, the Trust

---

3. The facts set forth in this subsection of the Background are drawn from Harman's complaint. *See Lewis v. U.S. Bank Trust NA*, 2020 UT App 55, n.1, 463 P.3d 694 ("On appeal from a motion to dismiss, we review the facts only as they are alleged in the complaint. We accept the factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff." (quotation simplified)).

Defendants did not convey title to the Property to 105 Partners in 2015, nor did they do so in 2017. And 105 Partners "never took any ancillary steps to obtain the conveyance of [the Property], including filing for record with the Utah County Recorder any instrument identifying the [Contribution Agreement], paying any of the taxes or expenses of [the Property], or taking any other action in furtherance of instigating the conveyance."

¶5      In January 2020, Cobble Way communicated with 105 Partners about potentially dissolving the project because it had "not progressed, leaving the various contributed land parcels encumbered for over five years," and Cobble Way and its owner also expressed the view that the "existing additional equity contribution requirement expired in August 2018, leaving no possibility of [105 Partners] obtaining a construction loan." Further, Provo City had not approved the development project, and "the time period in which city approval could be given" had allegedly passed.

¶6      In August 2020, Harman entered the picture and offered to purchase the Property from the Trust Defendants for $500,000. The Trust Defendants accepted Harman's offer, and Harman and the Trust Defendants each signed a Real Estate Purchase Contract (the REPC). Under a heading labeled "Offer to Purchase," the REPC listed "Property (General Description): small commercial buildings located on" the address for the Property, which it then listed in a separate line. An attached Notice of Interest and Exhibit identified the underlying plats of land as well. Under the REPC, Harman was required to pay the purchase price of $500,000 by August 10, 2021.

¶7      After learning about the REPC, 105 Partners sued the Trust Defendants, seeking enforcement of the Contribution Agreement (including its subsequent amendments). Harman filed a motion to intervene in that lawsuit. On May 14, 2021, however, and before the court could rule on Harman's motion to intervene, the Trust

Defendants and 105 Partners reached a settlement, and 105 Partners' suit was voluntarily dismissed with prejudice. Under the settlement terms, the Trust Defendants agreed to convey title to the Property to 105 Partners in exchange for $375,000, and the parties soon executed that agreement.[4]

*This Lawsuit*

¶8     Because Harman knew about the settlement agreement between the Trust Defendants and 105 Partners, Harman never tendered the $500,000 purchase price required by the REPC. Instead, on May 21, 2021, Harman filed the suit that's at issue in this appeal. In this suit, Harman named both 105 Partners and the Trust Defendants as defendants.[5] And in conjunction with this suit, Harman filed a lis pendens against the Property.

¶9     In the Complaint, Harman alleged seven causes of action. For analytical reasons, we'll discuss them in two groups.

¶10     In what we'll call the Partnership Claims (comprised of Claims I through IV), Harman sought to invalidate the partnership that had been created between 105 Partners and the Trust Defendants, and he likewise sought to invalidate the

---

4. It's a touch unclear from the record when title was actually conveyed. In a hearing that was held before the district court on November 29, 2021, counsel for 105 Partners simply said it had occurred after Harman entered into the REPC. When Harman's counsel was asked about this at oral argument in this appeal, counsel said that the Trust Defendants conveyed title to 105 Partners on August 9, 2021.

5. The district court allowed Harman to file an amended complaint, and this amended complaint was the operative complaint at the time of the various rulings at issue in this appeal. For simplicity, we'll refer to it as the Complaint moving forward.

agreement for the Trust Defendants to transfer the Property to 105 Partners. In brief, Harman asserted that the partnership was "void" and that "all agreements of the same [were] not binding" because the partnership's purposes had been frustrated (Claim I); that the doctrine of laches barred enforcement of the property-transfer agreement (Claim II); that 105 Partners had "repudiated" "all prior agreements in the former partnership" (Claim III); and that 105 Partners had committed fraud against the Trust Defendants (Claim IV).

¶11    In what we'll call the Ownership Claims (comprised of Claims V through VII), Harman sought to obtain ownership of the Property himself. In Claim V, Harman requested an order quieting title to the Property. In Claim VI, Harman sought specific performance of the REPC against the Trust Defendants based on Utah's Recording Act. And in Claim VII, Harman sought specific performance under the REPC, asserting that the Trust Defendants should be obligated to provide a "clear marketable title to Harman at closing of the specific performance of the sales contract."

¶12    In both the claims themselves and again at the close of the Complaint, Harman set forth his requests for relief. With respect to the Partnership Claims, Harman asked the court to invalidate the partnership and the Contribution Agreement, arguing that this was necessary so that he could obtain specific performance of the REPC. Harman also requested monetary damages against 105 Partners, but he did so only with respect to the fraud allegations he set forth in Claim IV. With respect to the Ownership Claims, Harman asked for an order requiring the Trust Defendants to "provide clear marketable title" to him and "quieting title as against 105 [P]artners." Harman did not request monetary damages relating to any of the Ownership Claims.

*The District Court Dismisses the Suit and Awards Attorney Fees to*
*105 Partners and the Trust Defendants*

¶13    The Trust Defendants and 105 Partners both filed motions to dismiss the suit under rule 12(b)(6) of the Utah Rules of Civil Procedure, and Harman opposed both motions. The district court held a hearing on those motions in November 2021.

¶14    On December 14, 2021, the district court issued a ruling dismissing all of Harman's claims with prejudice, and as a result, it released the lis pendens against the Property as well. Of note for this appeal, the court dismissed all of the Partnership Claims based on its conclusion that Harman lacked standing to "enforce and/or void any of the agreements between 105 Partners and the Trust Defendants." The court then dismissed the Ownership Claims for a variety of reasons.

- The court dismissed Claim V (which asked the court to quiet title in Harman's favor) because Harman "did not allege" that he had "title to the Property" but was instead only seeking a declaration that he should obtain title.

- The court dismissed Claim VI (specific performance based on Utah's Recording Act) because of the court's conclusion that Harman did "not allege[] that he signed the real estate purchase contract without notice of the interest of 105 Partners."

- The court dismissed Claim VII (specific performance based on the terms of the REPC) for two reasons. First, the court concluded that because Harman failed to tender the purchase price required by the REPC, he was not entitled to specific performance. And second, the court concluded that under a combination of provisions from the REPC, the court could not order the Trust Defendants to "provide a clear, marketable title."

¶15    On the same day that the district court dismissed the suit, Harman filed a notice of appeal. A few weeks after Harman filed his notice of appeal, the Trust Defendants and 105 Partners filed separate motions requesting attorney fees. On March 3, 2022, the district court issued a ruling granting these motions and awarding the Trust Defendants $10,000 and 105 Partners $15,000 in attorney fees, recognizing that both the Trust Defendants and 105 Partners "prevailed on the claims associated with" the REPC and the Contribution Agreement.

*The Injunction Proceedings*

¶16    On June 22, 2022, Harman filed a "Rule 62(c) Motion for Injunction" with the district court. In conjunction with this rule 62(c) motion, Harman submitted his own sworn affidavit (it was titled as his "Declaration," and we'll refer to it as such moving forward).

¶17    In the Declaration, Harman informed the court that he had learned that 105 Partners was "planning to prepare the Property and its adjacent properties in order to proceed with the development" that it had "planned." Harman also said that as part of this project, 105 Partners intended "to destroy the single family dwelling which [he] plan[s] to purchase, by bulldozing the same."

¶18    Harman then said that he had "a serious need to purchase the Property by reason" of his plans "to use it in connection with [his] apartment complex, which [he] own[s] and which is adjacent to the Property on the east." Harman declared that if "105 Partners destroys the single family dwelling which [he] plan[s] to purchase, it will cause immediate total irreparable harm, because [he] will not be able to then purchase the dwelling which [the Trust Defendants] agreed to sell to [him]." Drawing on this Declaration, Harman's motion requested "a Rule 62(c) injunction during the pendency of the appeal" that would "restrain

Defendant 105 Partners LLC from destroying, demolishing or causing harm to the single family dwelling which exists" on the Property.[6]

¶19 Without waiting for a response from 105 Partners, the district court denied the request for an injunction. The court gave two reasons for doing so: first, it believed that "the pending appeal" had "divest[ed]" it of jurisdiction to issue an injunction; and second, the court believed that rule 62(c) was "inapplicable" as a means of obtaining an injunction in the first instance.

¶20 On July 11, 2022, Harman filed a motion asking this court to issue an injunction pursuant to rule 8 of the Utah Rules of Appellate Procedure, and he attached the same Declaration in support. Due to what 105 Partners has alleged was a

---

6. There's some inconsistency in the record and briefing as to the nature of the buildings that were on the two parcels of land that we've collectively referred to as the Property. As indicated above, the REPC referred to "commercial buildings" that were located on the plats of land. In its appellate brief, the Trust Defendants simply refer to "pre-existing structures," while 105 Partners' appellate brief refers to "a single-family dwelling and a closely adjacent commercial building." And as an additional point of potential complication, in the portion of Harman's motion for a "Rule 62(c) Injunction" that we just cited (as well as in various other documents that he filed in an effort to stop the demolition), Harman referred to the importance of the "single family dwelling" that was on one of the parcels (and he did so with no apparent mention of the other building).

For fidelity to the record, we've left unchanged any quotations in which Harman referred to the importance of the "single family dwelling." And in any event, as will be discussed shortly, both of the buildings have since been demolished, so any potential distinction regarding the number and nature of these buildings proves immaterial to our resolution of this appeal.

"misunderstanding" between its officers and its contractor, 105 Partners' contractor demolished the buildings sometime around July 18, 2022. On August 3, 2022, this court denied Harman's motion for a rule 8 injunction.

## ISSUES AND STANDARD OF REVIEW

¶21    On appeal, Harman raises various challenges to the court's decision to dismiss his claims. We "review the grant of a motion to dismiss for correctness, granting no deference to the decision of the district court." *Gregory v. Shurtleff*, 2013 UT 18, ¶ 8, 299 P.3d 1098 (quotation simplified).

## ANALYSIS

### I. Mootness

¶22    Harman challenges the district court's dismissal of his suit. Before considering the merits of his various arguments, however, we must first determine whether we have jurisdiction to consider them at all.

¶23    In their briefs, the Trust Defendants and 105 Partners both argue that because the buildings that were on the Property have been demolished, this case is now moot. If they're correct, we lack jurisdiction to consider Harman's claims. *See First Nat'l Bank of Layton v. Palmer*, 2018 UT 43, ¶ 10, 427 P.3d 1169 (recognizing that a court lacks "jurisdiction over issues that have become moot"); *Bywater v. Brigham City Corp.*, 2024 UT App 53, ¶ 21, 548 P.3d 531 (explaining that mootness is jurisdictional), *petition for cert. filed*, June 12, 2024 (No. 20240627). We have an "obligation to ensure that we have jurisdiction over all matters before us, and we do not take lightly our responsibility to ensure we have proper jurisdiction before deciding a case." *11500 Space Center LLC v.*

*Private Capital Group Inc.*, 2022 UT App 92, ¶ 34, 516 P.3d 750 (quotation simplified). We accordingly start here.

¶24 As indicated, Harman raised two groups of claims—the Partnership Claims and the Ownership Claims. For analytical reasons, we'll start with the Ownership Claims, turning from there to the Partnership Claims.

## A. Ownership Claims

¶25 "A case may be mooted on appeal if the relief requested is rendered impossible or of no legal effect." *Transportation All. Bank v. Int'l Confections Co.*, 2017 UT 55, ¶ 15, 423 P.3d 1171 (quotation simplified). Where "the issues that were before the trial court no longer exist, the appellate court will not review the case." *Richards v. Baum*, 914 P.2d 719, 720 (Utah 1996).

¶26 Because the mootness doctrine largely turns on the continuing availability of the "relief requested," *Transportation All. Bank*, 2017 UT 55, ¶ 15 (quotation simplified), Utah's mootness cases have commonly looked to the precise terms of the plaintiff's pleadings (whether it be the complaint or some other filing) to determine the nature of the requested relief. *See, e.g.*, *Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1043 (Utah 1983) (holding that an appeal was not moot where the "appellants [sought] not to prevent the sale, but to establish their right to a share of the sale proceeds," and where that "relief could be granted even though the sale [was] already completed and the time for redemption [had] elapsed"); *Wasatch County v. Utility Facility Review Board*, 2018 UT App 191, ¶ 20, 437 P.3d 406 (holding that "under the circumstances of [that] case, the specific remedy Wasatch County [sought]—revocation of the conditional use permit—[was] simply unavailable"). And this focus makes sense. After all, "our law of civil procedure has long deferred to the plaintiff as the master of the complaint. . . . We judges are neutral arbiters—not advocates. To police that distinction we keep ourselves out of the business of

second-guessing the pleading decisions of the parties." *Hunter v. Finau*, 2024 UT App 17, ¶ 29, 545 P.3d 294 (quotation simplified), *cert. denied*, 550 P.3d 993 (Utah 2024).

¶27 The Trust Defendants and 105 Partners both assert that Harman cannot obtain his requested relief without the continued existence of the buildings. After all, in the Complaint, Harman sought to enforce his right to purchase the Property under the terms set forth in the REPC. And as indicated, the REPC initially identified the property that was being purchased as "small commercial buildings located on" the identified address. In addition, the Trust Defendants and 105 Partners also point to various statements and arguments that Harman made while seeking to prevent the destruction of the buildings. In the motion for an injunction that Harman filed with the district court, Harman claimed that "his agreement" was "to purchase the Property which includes the dwelling on the Property," and he further argued that "[i]f the Property [was] destroyed"—which seems to be a reference to the buildings, not the land—he would "not then be able to obtain the fruits of his agreement in this suit for specific performance." In the motion for a rule 8 injunction that he filed with this court, Harman similarly claimed that he "would truly be irreparably harmed in a profound way if the Property which has such a dwelling on it is demolished," that allowing 105 Partners to "bulldoze the single family dwelling" would "destroy[] most of the value of the [Property]," and that "[i]f the Property is destroyed," he would "not then be able to obtain the fruits of his agreement in this suit for specific performance."

¶28 We thus understand the mootness arguments from 105 Partners and the Trust Defendants to essentially turn on two sequential propositions: first, that the "relief [Harman] requested" was inextricably linked to the buildings, and second, that regardless of whether the requested relief was exclusively or even partially predicated on the buildings, Harman cannot obtain that

relief now because the buildings have been demolished. We disagree on both fronts.

¶29    First, in the Complaint, Harman claimed that he was "entitled to specific performance" of the REPC. The agreement itself specifically referenced the buildings, but through both its broad language and the attached Notice of Interest and Exhibits, this agreement also contemplated that Harman was purchasing the underlying plots of land. Moreover, in the "General Allegations" section of the Complaint, Harman identified the Property that "is the subject matter of [his] action" by referencing the parcel numbers and the geographical descriptions of the Property. Thus, the Complaint and the underlying REPC made it clear that Harman was seeking specific performance of the right to purchase both the buildings and the land.

¶30    It's true that, in his requests for injunctive relief, Harman repeatedly stressed the importance of the buildings to him. But contrary to the suggestions of 105 Partners and the Trust Defendants, we don't believe that by doing so, Harman affirmatively disclaimed his intent to purchase the land in the event that the buildings were destroyed. In his Declaration, for example, Harman said that he had "a serious need to purchase the Property by reason" of his plans "to use it in connection with [his] apartment complex, which [he owns] and which is adjacent to the Property on the east." And in his rule 8 motion to this court, Harman explained that the Property provides "an important right of way to [his] apartment property for large trucks as well as [his] tenants." This right of way would, of course, operate independently of the buildings, and this assertion thus reinforces that, separate from the buildings, Harman saw value in the land itself.

¶31    From all this, we think it's clear that the "relief requested" in this lawsuit was a request for specific performance of an agreement to purchase both the buildings and the land.

¶32 The second question, then, is this: since the buildings were part of this contract and part of the requested relief, and since those buildings have now been destroyed, can Harman obtain specific performance for just part of the contract? The answer to that question is yes. Our supreme court has held that when the nature of a property changes in between the formation of the contract and the completion of the transfer, the purchaser may seek partial specific performance (often with an abatement of the purchase price). *See, e.g.*, *Kelley v. Leucadia Fin. Corp.*, 846 P.2d 1238, 1242 (Utah 1992) (holding that "[s]pecific performance with an abatement in the purchase price" was available as "an appropriate remedy" when the parties learned, after the formation of the contract, that the sellers might not have owned all of the property in question); *Castagno v. Church*, 552 P.2d 1282, 1283–84 (Utah 1976) (holding that the district court was justified in awarding specific performance "with an abatement in the purchase price equal to the value of the deficiency or defect" where, after the parties had agreed to a contract for the sale of land and water rights, an administrative decision prevented the purchasers from actually obtaining the water rights).[7]

---

7. Utah is not alone in recognizing the availability of such a remedy. *See, e.g.*, 81A C.J.S. *Specific Performance* § 10 (2024) ("Ordinarily, unless the court can decree specific performance as to the whole of a contract, it will not enforce any part of it," but "where it is impossible to afford specific performance of an entire contract, relief may be granted as to a part of it in appropriate circumstances," including an award of "partial specific performance of the contract with an abatement in the purchase price reflecting the loss."); 25 Williston on Contracts *Specific Performance and Other Equitable Remedies* § 67:36 (2024) (holding that a "court of equity" "may order specific performance of the contract on terms different from those set forth in the contract (continued…)

¶33    Indeed, after the Trust Defendants and 105 Partners made their mootness arguments in their appellate briefs, Harman cited to both *Kelley* and *Castagno* in his reply brief. In express reliance on these decisions, Harman argued that this case is not moot precisely because he could still obtain specific performance plus abatement of the purchase price as a means of accounting for the destruction of the buildings.

¶34    In response to this assertion, 105 Partners and the Trust Defendants suggest that it's too late for Harman to request this type of remedy. In their view, a party must ordinarily set forth any request for damages in its pleadings at the trial court level, which is problematic because Harman did not ask for specific performance *plus abatement* in his pleadings below. But this argument asks us to turn a blind eye to the sequencing of this case. After all, Harman had no reason to request specific performance plus abatement from the district court, given that the buildings weren't demolished until after the district court had dismissed his suit and after he had filed his notice of appeal. Moreover, we also emphasize the procedural posture in which we've received this case—namely, Harman is appealing the district court's grant of a rule 12(b)(6) motion to dismiss. In theory, if we reversed that dismissal, the case would be returned to the district court in a pretrial posture—and, as a result, Harman would then have the ability to request leave to amend his initial damages request to ask

---

where the court identifies equitable justifications, such as the fulfillment of the parties' actual intention, or where doing so will remedy a harm caused by the unconscionable or inequitable conduct of one of the parties"). And of particular note given the facts of this case, some authorities have suggested that partial specific performance is available in a situation in which "improvements were destroyed prior to the completion of the transfer." 19 Am. Jur. 3d *Specific Performance with Abatement* § 16 (2024).

for specific performance plus abatement. *Cf. Richards*, 914 P.2d at 721–22 (noting that "the amendment of pleadings is sometimes permitted on remand").[8]

¶35    To be clear, for purposes of our mootness analysis, we're not holding that Harman actually is entitled to relief. Rather, the sole question at this stage is whether the requested relief is "rendered impossible or of no legal effect." *Transportation All. Bank*, 2017 UT 55, ¶ 15 (quotation simplified). Because Harman has always sought specific performance of a contract that included the sale of land, and because our supreme court has recognized that a party can, under some circumstances, obtain specific performance of a portion of a contract accompanied by abatement of the purchase price, it would still be possible for

---

8. While we were deliberating on this appeal, our supreme court issued *Grewal v. Junction Market Fairview, LC*, 2024 UT 20, -- P.3d --. The Trust Defendants subsequently filed a rule 24(j) letter suggesting that Grewal "confirms" that Harman's "potential but unpleaded claims" for specific performance plus abatement "do not defeat mootness." We disagree with the Trust Defendants' proposed application of *Grewal*. In *Grewal*, the supreme court held that the case had become moot because, while the appeal was pending, title to the property in question was transferred to an unquestioned bona fide purchaser. *Id.* ¶ 24. Because of this, the plaintiff—who had filed a request for specific performance— could no longer obtain any relief at all. By contrast, as we've explained, Harman can in theory still obtain specific performance, and the destruction of the buildings (which is the only thing the Trust Defendants or 105 Partners has pointed to as the basis for a mootness determination) does not alter that conclusion.

Harman to obtain the relief that he has always sought. For these reasons, we conclude that his claims are not moot.[9]

B.      Partnership Claims

¶36    We also conclude that Harman's challenges to the dismissal of the Partnership Claims are not moot.

¶37    In each of these claims (i.e., Claims I through IV), Harman argued that the partnership agreement between the Trust Defendants and 105 Partners should be voided. In isolation, the nature of this requested relief alone suggests that these claims should survive a mootness challenge because, in theory, the

---

9. We've previously held that a party's failure to obtain a stay of a lower court judgment may become "material to the question of mootness." *Wasatch County v. Utility Facility Review Board*, 2018 UT App 191, ¶ 14, 437 P.3d 406. In other words, an appeal may become moot "where the appealing party did not use available procedural tools to preserve the status quo." *Id.* ¶ 16. Other decisions have recognized this principle too. *See, e.g.*, *Richards v. Baum*, 914 P.2d 719, 721–22 (Utah 1996); *Kellch v. Westland Mins. Corp.*, 484 P.2d 726, 726 (Utah 1971); *Bywater v. Brigham City Corp.*, 2024 UT App 53, ¶¶ 27–35, 548 P.3d 531. This additional component of our mootness jurisprudence might provide additional reason to conclude that Harman's suit is not moot. After all, after the district court dismissed his suit, Harman asked both the district court and this court to issue an injunction that would stop the demolition of the buildings.

    The potential wrinkle here is that the courts denied Harman's requests. But we need not determine how a mootness analysis would proceed if a party tried preserving the status quo and yet the courts rejected the request, thereby allowing the status quo to change. Because we conclude that the continuing availability of specific performance alone means that this case is not moot, we need not answer this question.

partnership could be voided irrespective of whether the buildings survived. And separate from that, we also note that Harman linked each of these claims to his request for specific performance of the REPC:

- At the outset of Claim I, Harman asserted that "105 Partners should not be allowed to interfere or stop Harman from purchasing [the Property] because the partnership between it and the [Trust Defendants] is void."

- At the outset of Claim II, Harman asserted that "105 Partners [has] no power to interfere with Harman's Purchase Agreement because all of its agreements with the [Trust Defendants] are void on grounds of laches."

- At the outset of Claim III, Harman asserted that there "is no agreement now existing where 105 Partners can interfere or stop the [Trust Defendants] from selling the Property to Harman."

- And at the outset of Claim IV, Harman asserted that "105 Partners should not be allowed to stop or interfere with Harman's purchase contract with the [Trust Defendants] because of fraud on the part of 105 Partners."

Harman also included similar language with respect to each claim in the portion of the Complaint in which he detailed the relief requested. And at oral argument in this appeal, Harman's counsel again affirmed that each of these claims was linked to his request for specific performance of the REPC. Because we concluded above that the Ownership Claims survive this mootness challenge because of Harman's request for specific performance, it thus follows that the Partnership Claims survive too.

¶38   In short, we conclude that Harman's claims are not moot. As a result, we have jurisdiction to consider the merits of Harman's challenges to the dismissal of his suit.

## II. Dismissal of the Partnership Claims

¶39   As discussed above, Harman raised seven claims in his brief, and we've referred to Claims I through IV as the Partnership Claims. In these claims, Harman sought to invalidate the partnership between 105 Partners and the Trust Defendants on various grounds, including laches, repudiation, and fraud, as well as an assertion that the partnership was "void" and "all agreements of the same [were] not binding" because the partnership's purposes had been "frustrated."[10] As explained, he sought to do so to facilitate his own claims to the Property. The district court dismissed the Partnership Claims, however, concluding that Harman lacked standing to try to invalidate agreements between 105 Partners and the Trust Defendants. Harman now challenges that conclusion on appeal, but we agree with the district court.

¶40   "To properly bring an issue before the court for adjudication, a party must have standing." *Provo City Corp. v. Thompson*, 2004 UT 14, ¶ 9, 86 P.3d 735. The "traditional standing test requires plaintiffs to allege that they have suffered or will suffer some distinct and palpable injury that gives them a personal stake in the outcome of the legal dispute." *Southern Utah Wilderness All. v. Kane County Comm'n*, 2021 UT 7, ¶ 16, 484 P.3d 1146 (quotation simplified). This test also "require[s] a plaintiff to show that he or she suffered an invasion of a legally protected interest that is concrete and particularized." *Id.* ¶ 17 (quotation

---

10. We have some question about whether a plaintiff even can raise laches as a cause of action, as opposed to a defendant raising it as a defense. *See, e.g.*, *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶¶ 19, 21, 289 P.3d 502 (referring to the "affirmative defense of laches"); 30A C.J.S. *Equity* § 146 (2024) (referring to the "defense of laches"). But we need not resolve this here since we ultimately resolve these claims based on a lack of standing.

simplified); *see also Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983) (explaining that under "the traditional test for standing," a plaintiff "must have a legally protectible interest in the controversy" (quotation simplified)); *In re John Edward Phillips Family Living Trust*, 2022 UT App 12, ¶ 24, 505 P.3d 1127 (same). In this sense, "a party may generally assert only his or her own rights and cannot raise the claims of third parties who are not before the court." *Thompson*, 2004 UT 14, ¶ 9; *accord Lehi City v. Rickabaugh*, 2021 UT App 36, ¶ 16 n.7, 487 P.3d 453.

¶41    We applied these principles in *D.U. Co. v. Jenkins*, 2009 UT App 195, 216 P.3d 360, a case that has some similarity to what's at issue here. In that case, Elaine and Sam Jenkins lived in a home that was owned by the D.U. Company (DUC).[11] *See id.* ¶ 2. DUC sold the home to Alan Jenkins (Sam's brother). *See id.* After Elaine divorced Sam, she filed suit against both Alan and DUC, seeking to quiet title in the property. *See id.* ¶ 3. DUC dismissed itself from the suit, claiming that it had no interest. *See id.* At trial, Elaine prevailed against Alan and thus received title. *See id.* Unhappy with this result, DUC then sued Elaine. In its first cause of action, it sought to quiet title on behalf of Alan. *See id.* ¶ 4. The district court dismissed that cause of action for lack of standing, however, and we affirmed that conclusion on appeal. *See id.* ¶¶ 11–12. Relying on *Thompson*, we held that by seeking to "quiet[] title in Alan Jenkins's name," DUC was asserting a claim of a "third party who [was] not before the court." *Id.* ¶ 12 (quotation simplified). Because DUC had not established that it had a "legally protectable interest in asserting Alan Jenkins's potential claims," we held that DUC lacked standing to raise such claims on his behalf. *Id.*

---

11. Elaine and Sam belonged to a religious order under which "all property was held in common," and DUC was a holding company for that order. *D.U. Co. v. Jenkins*, 2009 UT App 195, ¶ 2, 216 P.3d 360.

¶42 Of some note, DUC had also asserted a second cause of action in the alternative in which it tried to undo its own earlier sale of the property to Alan. *See id.* ¶ 4. In DUC's view, prevailing on this cause of action would provide a basis for quieting title to the property in its own right. *See id.* We affirmed the dismissal of that cause of action on res judicata grounds. *See id.* ¶¶ 13–17. But in doing so, we held that even though DUC was now asserting, through its second cause of action, that it had a "legally protectable interest in the validity of the warranty deed it earlier issued to Alan Jenkins," and even though that same warranty deed was also at issue in the claims that DUC sought to assert on Alan's behalf against Elaine, this still did not give DUC standing to assert claims for Alan against Elaine in the first cause of action. *See id.* ¶ 12. This was so because, again, DUC had not shown that it had a legally protectible interest in asserting claims for Alan against Elaine. *See id.*

¶43 These principles have clear application to this case. In its ruling dismissing Harman's claims, the district court concluded that Harman was not "an assignee or third-party beneficiary of any of the agreements between 105 Partners and the Trust Defendants" and that Harman therefore had no "authority to act on behalf of the Trust Defendants" to raise these claims. Harman has not meaningfully challenged these conclusions on appeal, much less carried his burden of persuading us that any of them were incorrect. Because Harman has not established that he had a "legally protectable interest in asserting" claims for the Trust Defendants against 105 Partners, he lacks standing to do so. *Id.* In other words, he "cannot raise the claims of third parties," *Thompson*, 2004 UT 14, ¶ 9, but, instead, can only assert his own rights. And under *D.U. Co.,* this remains true even though Harman claims to have his own "legally protectable interest" in the Property through the REPC. 2009 UT App 195, ¶ 12.

¶44 In light of all this, we thus conclude that the district court correctly dismissed the Partnership Claims for lack of standing.[12]

### III. Dismissal of the Ownership Claims

¶45 Harman next challenges the dismissal of Claims V through VII, which we have referred to as the Ownership Claims. As explained below, we (A) reverse the district court's dismissal of Claim VII, which sought specific performance under the REPC; (B) affirm the district court's dismissal of Claim VI, which sought specific performance under Utah's Recording Act; and (C) reverse the district court's dismissal of Claim V, which sought to quiet title.

A. Specific Performance of the REPC

¶46 The district court dismissed the specific performance claim for two independent reasons. Neither ground supports dismissal, at least not at this procedural stage.

¶47 **Failure of tender.** The district court first concluded that Harman was not entitled to specific performance because he failed to tender the purchase price required by the REPC. In his brief, Harman acknowledges that he did not tender the $500,000 required by the REPC, but he nevertheless argues that the court

---

12. Although somewhat unclear from his brief, we understand Harman to be asserting standing under the traditional test we've discussed above. In addition to traditional standing, our supreme court has recognized other forms of standing. These include public interest standing and associational standing, *see ACLU of Utah v. State*, 2020 UT 31, ¶¶ 3–4, 467 P.3d 832, as well as statutory standing, *see Bleazard v. City of Erda*, 2024 UT 17, ¶ 37, -- P.3d --. Harman has not specifically argued that he has standing under any of these alternate approaches. If he meant to do so implicitly, we reject such arguments as being inadequately briefed.

should have held that this failure was justified by futility, which is a recognized exception to the tender requirement. *See, e.g., Shields v. Harris*, 934 P.2d 653, 655 (Utah Ct. App. 1997) (explaining that Utah courts consider "tender to be fruitless and thus excused where the lienor states that he or she does not intend to accept payment" (quotation simplified)); *Carr v. Enoch Smith Co.*, 781 P.2d 1292, 1295 (Utah Ct. App. 1989) (recognizing that the "familiar rule that the law does not require one to do a vain or useless thing excuses the making of a formal tender which would otherwise be required, where it is reasonably plain and clear that if made, such a tender would be an idle ceremony and of no avail" (quotation simplified)). Relying on these principles, Harman argues that any tender he might have made would not have mattered because the Trust Defendants would not have conveyed the Property to him even if he had tendered the purchase price.

¶48 Although Harman raised the futility defense below, the district court did not discuss this defense in its ruling, let alone explain how this fact-bound defense failed as a matter of law in the context of a motion to dismiss. Futility "is an equitable defense that, in the first instance, is best addressed to the sense of justice and good conscience of the trial court, to which we accord considerable latitude of discretion." *Richardson v. Hart*, 2009 UT App 387, ¶ 21, 223 P.3d 484; *see also Jenkins v. Equipment Center, Inc.*, 869 P.2d 1000, 1003 (Utah Ct. App. 1994) ("The question of whether a tender would have been fruitless is fact-intensive. Thus, we defer to the trial court's findings." (quotation simplified)). Given that Harman preserved his futility argument, and given that his lack of tender would be excused if Harman prevails on that argument, we conclude that the district court's dismissal for a lack of tender was improper, at least at this procedural stage, because the court failed to address the potentially dispositive issue that was before it. We thus reverse that ruling and remand

with directions for the court to consider and rule on Harman's futility defense.

¶49    **Failure of obligations.** The district court separately concluded that, even if Harman was "not required to make a full tender," he still was not entitled to specific performance. The court's explanation for this ruling was a touch unclear, and the parties' briefs have failed to offer much additional clarity. As we understand it, the court's ruling was grounded in various provisions in the REPC under which Harman agreed to purchase the Property subject to a "Commitment for Title Insurance" that was to be provided by the Trust Defendants. The court noted that, under the REPC, Harman was entitled to either rescind or pursue other remedies if the Commitment for Title Insurance revealed potential problems with the title. The district court also noted that it was undisputed that Harman was "aware of the existing prior interest of 105 Partners and its agreements with the Trust Defendants" when he agreed to the REPC. From all this, the court dismissed Harman's specific performance claim because, in its view, the Trust Defendants could not—and were not required to—"provide a clear, marketable title to [Harman] that was not subject to the contents of the Commitment for Title."

¶50    On the briefing presented to us on appeal, we conclude that this dismissal was in error. Our supreme court has held that a "seller is not entitled to take advantage of a provision intended to benefit the buyer alone." *Kelley*, 846 P.2d at 1242. In other words, if a seller violates its "contractual obligations under a provision" that is "clearly for the benefit of the buyer," the buyer may still seek specific performance. *Id.*; *see also SMS Fin., LLC v. CBC Fin. Corp.*, 2017 UT 90, ¶ 23, 417 P.3d 70 (recognizing that "contractual conditions can be waived by the benefitted party and do not prevent specific performance").

¶51    In his brief, Harman argued that these particular provisions from the REPC (obligating the Trust Defendants to

obtain a Commitment for Title Insurance and allowing Harman the option to rescind the REPC if a title issue were identified) were intended to benefit *him*, not the Trust Defendants. In direct reliance on *Kelley*, Harman then argued that the court's ruling on this point was therefore in error. In their responsive briefs, neither of the appellees even acknowledged *Kelley*, much less responded to Harman's claim that the REPC provisions in question were intended to benefit only him. Given the nature of the ruling before us, the unrebutted legal arguments presented by Harman on appeal, and the supreme court's decision in *Kelley*, we conclude that Harman has carried his burden of demonstrating that this dismissal was erroneous. We accordingly reverse it.[13]

---

13. Though somewhat unclear, the district court's ruling was at least arguably predicated on an additional conclusion—namely, that because there were competing claims to the Property, Harman is not entitled to specific performance as a matter of law. But our supreme court has contemplated that a buyer in such a circumstance can still pursue "traditional common law or equitable remedies," including specific performance. *Kelley v. Leucadia Fin. Corp.*, 846 P.2d 1238, 1242 (Utah 1992). Were it otherwise, "a seller [would] have no motivation to clear title" and "the cost of clearing title" would be improperly "shifted to a buyer determined to purchase the property." *Id.* Moreover, as explained below, Utah's Recording Act seems designed to confront scenarios in which there are competing claims to the same property. From this, we see no support for the district court's seeming conclusion that the existence of competing claims to the Property means that Harman cannot seek specific performance of his own rights under the REPC.

But we also note that the briefing on this entire issue has been less than robust. Because the parties "made no real effort" to present the competing arguments on it, "we're in no position to

(continued…)

B.      Utah's Recording Act

¶52    Harman next challenges the district court's decision to dismiss his claim under what has sometimes been referred to as Utah's Recording Act. *See Haik v. Sandy City*, 2011 UT 26, ¶ 13, 254 P.3d 171. The district court dismissed this claim based on its conclusion that Harman was not a "bona fide purchaser[]," and it based this on its conclusion that, under the allegations set forth in the Complaint, Harman had purchased the Property with knowledge of the "existing prior interest of 105 Partners and its agreements with the Trust Defendants." In the court's view, Harman had "notice of a prior, unrecorded interest" and therefore could not have acted in "good faith" as required to be a bona fide purchaser. *See Pioneer Builders Co. of Nevada v. KDA Corp.*, 2012 UT 74, ¶ 23, 292 P.3d 672.

¶53    Harman challenges this ruling on appeal, asserting that although he knew about the Contribution Agreement, he also had reason to believe that the terms of the Contribution Agreement had not been fully accomplished and, thus, that 105 Partners had no valid interest in the Property. In their briefs, the two sides dispute whether Harman's presumptions about the status of the Contribution Agreement relieved him of being on notice of a prior interest. But we need not resolve this dispute. This is so because, separate from this potential issue, 105 Partners and the Trust Defendants also ask us to affirm on the alternate ground that

---

do this work ourselves." *Keisel v. Westbrook*, 2023 UT App 163, ¶ 52 n.9, 542 P.3d 536. As a result, "we leave open the possibility that, if some future case arises in which" this issue is "better presented, we may consider [it] anew." *Id.* Thus, for purposes of this appeal, we simply hold that, based on the ruling and the briefing before us, we see no sustainable support for the court's dismissal of Harman's REPC-based specific performance claim under rule 12(b)(6) based on the conclusion that specific performance was unavailable.

Harman did not qualify as a subsequent purchaser for purposes of Utah's Recording Act. We agree with this contention and affirm the dismissal on this basis alone. *See Cochegrus v. Herriman City*, 2020 UT 14, ¶ 36, 462 P.3d 357 ("It is within our discretion to affirm a judgment on an alternative ground if it is apparent in the record." (quotation simplified)).[14]

¶54    Utah's Recording Act applies when more than one purchaser claims a right to a single property. Under its terms,

> [e]ach document not recorded as provided in this title is void as against any subsequent purchaser of the same real property, or any portion of it, if: (1) the subsequent purchaser purchased the property in good faith and for a valuable consideration; and (2) the subsequent purchaser's document is first duly recorded.

Utah Code § 57-3-103. Put differently, "where two purchasers claim title to real property, the subsequent purchaser prevails only so long as he *took the property in good faith* and was the first to record his interest." *Morris v. Off-Piste Capital LLC*, 2018 UT App 7, ¶ 29, 418 P.3d 66 (emphasis added, quotation otherwise simplified). "To take property in good faith, a subsequent purchaser *must take title to the property* without notice of a prior, unrecorded interest in the property. Notice of a prior interest may be actual or constructive." *Pioneer Builders Co. of Nevada*, 2012 UT

---

14. Because Harman recorded the REPC prior to 105 Partners recording its interest in the Property, we note here that the Utah Supreme Court has left open the possibility that there may be circumstances in which an "executory contract"—i.e., a "contract that contemplates that the performance of a contractual duty is to occur in the future"—"may subvert a subsequent purchaser's claim to having purchased the property in good faith." *Haik v. Sandy City*, 2011 UT 26, ¶¶ 19, 22, 254 P.3d 171.

74, ¶ 23 (emphasis added, quotation otherwise simplified); *see also Haik*, 2011 UT 26, ¶ 13 ("Under Utah's Recording Act . . . , a subsequent purchaser for value prevails over a previous purchaser if the subsequent purchaser (1) takes title in good faith and (2) records before the previous purchaser.").

¶55      In *Young Resources Limited Partnership v. Promontory Landfill LLC*, 2018 UT App 99, ¶ 23, 427 P.3d 457, we reiterated and applied the rule that a subsequent purchaser is one who has actually received title to the property in question. There, an entity called PPLR was formed for the purpose of developing a landfill. *Id.* ¶ 2. One of its founding members, Young Resources Limited Partnership (Young Resources), conveyed property to PPLR. *See id.* ¶¶ 4–5. In 2004, the manager of PPLR transferred that property to another entity (referred to as "Promontory Landfill") without the approval of PPLR's members and without attaching certain conditions that were arguably required by PPLR's operating agreement. *See id*. ¶ 5. In 2016, Young Resources filed a lawsuit claiming that the transfer from PPLR to Promontory Landfill was invalid. *See id.* ¶ 6. One of its claims asserted that, under Utah Code section 57-3-103, Promontory Landfill was not a bona fide purchaser. *See id.* ¶ 23. The district court dismissed this claim on statute of limitations grounds, and we affirmed. *See id.* ¶¶ 7, 23–34.

¶56      In doing so, we first considered the question of when the cause of action under section 57-3-103 accrued. *See id.* ¶ 23. We held that the "last event necessary to complete this cause of action was *deeding* the [property] from PPLR to Promontory Landfill" without the necessary conditions, and we then held that "[a]t that point, the issue of whether Young Resources' unrecorded rights were extinguished by the sale to a bona fide purchaser was ripe for adjudication." *Id.* ¶ 23 (emphasis added). We further held that "[o]nce PPLR conveyed the property to Promontory Landfill" without the conditions, "an actual clash of the parties' legal rights existed that could be resolved" in a suit under section 57-3-103. *Id.*

In other words, Young Resources "could have brought and prosecuted this claim as soon as the allegedly null and void *transfer* occurred." *Id.* ¶ 24 (emphasis added). And because that transfer had occurred in 2004, the suit that was filed in 2016 was untimely. *See id.* ¶¶ 20–34.

¶57 Consistent with the language cited above and our application of it in *Young Resources*, other Utah cases that have interpreted Utah's Recording Act have commonly involved competing parties who had each received a deed or title to the property in question. *See, e.g.*, *Insight Assets, Inc. v. Farias*, 2013 UT 47, ¶¶ 1, 15–16, 321 P.3d 1021 (assessing the priority of two executed mortgages); *Salt Lake County v. Metro West Ready Mix, Inc.*, 2004 UT 23, ¶¶ 2–3, 12–19, 89 P.3d 155 (interpreting the recording statute where one party had an unrecorded deed and the other a quitclaim deed); *Ault v. Holden*, 2002 UT 33, ¶¶ 2, 32, 44 P.3d 781 (considering a claim under the recording statute between two parties who each had a deed to the property); *Morris*, 2018 UT App 7, ¶¶ 2–3, 28–38 (determining priority between two entities with competing trust deed assignments); *Sterling Fiduciaries LLC v. JPMorgan Chase Bank*, 2016 UT App 107, ¶¶ 2–6, 20, 372 P.3d 741 (assessing the competing interests of the property owner and the owner of a note attached to the property).

¶58 Here, however, Harman never received a deed to the Property, so he has not "take[n] title to the property," *Pioneer Builders Co. of Nevada*, 2012 UT 74, ¶ 23 (quotation simplified), much less done so in good faith. Moreover, as explained above, Harman also has not completed the terms of his own contract—i.e., he has not tendered the $500,000 as required by the REPC, nor has any court held that he's entitled to specific performance of it. As a result, on this record and under the current procedural posture, Harman has no "legal rights" to the Property, so his assertion that he should be regarded as a "bona fide purchaser" of the Property for purposes of Utah's Recording Act is not "ripe for adjudication." *Young Res. Ltd. P'ship*, 2018 UT App 99, ¶ 23.

For this reason, we see no basis for reversing the district court's dismissal of his claim under Utah's Recording Act.[15]

C.    Quiet Title

¶59    Finally, the district court dismissed Harman's separate claim to quiet title.

¶60    "A quiet title claim . . . is one to quiet an existing title against an adverse or hostile claim of another. It is not an action brought to establish title. Consequently, a quiet title claim fails if the plaintiff cannot establish valid title or some other valid and existing property right." *WDIS, LLC v. Hi-Country Estates Homeowners Ass'n*, 2019 UT 45, ¶ 42, 449 P.3d 171 (quotation simplified). "Generally, to succeed in an action to quiet title to real estate, a plaintiff must prevail on the strength" of the plaintiff's "own claim to title and not on the weakness of a defendant's title or even its total lack of title." *Thatcher v. Lang*, 2020 UT App 38, ¶ 26, 462 P.3d 397 (quotation simplified).

¶61    Above, we reversed the district court's dismissal of Harman's specific performance claim. Depending on the outcome of that claim, Harman may be entitled to quiet title as well. As a result, we also reverse the dismissal of Harman's quiet title claim.[16]

---

15. Under this same analysis, however, if Harman does obtain title to the Property in the future (such as through further litigation), he may yet have a claim under Utah's Recording Act that would at that point be ripe for litigation.

16. At the close of the case, the district court awarded attorney fees to both 105 Partners and the Trust Defendants. Those awards were based on the court's conclusion that 105 Partners and the

(continued…)

CONCLUSION

¶62  Because Harman could still obtain specific performance of his contract to purchase the Property, his claims were not mooted by the demolition of the buildings during the pendency of this appeal. Turning to the merits, we affirm the district court's dismissal of the Partnership Claims based on Harman's lack of standing. On the Ownership Claims, we affirm the dismissal of Harman's claim under Utah's Recording Act, given that the claim is not yet ripe. But we reverse the district court's dismissal of Harman's request for specific performance based on the REPC, and we likewise reverse its dismissal of the quiet title action. Finally, because we have reversed the dismissal of the specific performance and quiet title claims, we vacate the district court's award of attorney fees. We accordingly remand for further proceedings consistent with this opinion.[17]

---

Trust Defendants were the prevailing parties; that conclusion, in turn, was partially based on their successes in obtaining the dismissal of the specific performance and quiet title claims. Because we have now reversed those dismissals, we likewise vacate the court's decision to award attorney fees, though we leave open the possibility that the court may reconsider the question later if any party requests attorney fees after the case has concluded.

17. As a final matter, we think it appropriate to note that while Harman has prevailed on some of the issues in this appeal, his successes came despite, not because of, the overly aggressive tone used throughout much of his appellate briefing.

    Attorneys have a duty to "act with reasonable diligence" in representing a client, Utah R. Prof'l Conduct 1.3, and that duty is often described as one of "zealous advocacy," *see* Utah R. Prof'l Conduct, Preamble. But zealous advocacy must still be

(continued…)

professional advocacy. The standards of civility set forth by our supreme court establish as much. As explained there, while "fulfilling [the] duty to represent a client vigorously," a lawyer must still avoid conduct that may be characterized as "uncivil [or] abrasive." Utah R. Sup. Ct. 14-301, Preamble.

The language used by Harman's counsel in his briefs repeatedly crossed the line from stridency to incivility. Harman's counsel characterized arguments that had been made by his opponents as "nonsense," "silly and outrageous," "totally, totally, totally absurd," and "ludicrous," and he also claimed that opposing counsel had "breathtakingly [and] completely ignore[d]" controlling precedent. Harman's counsel directed similar hostility at the district court. At one point, he stated that "with full due respect for all courts of this state, still, for the n'teenth time, the lower court has gone again directly against the plain language of appellate case law." At another, he claimed that it was "absolutely unbelievable and incredible that a lower court could ever, ever, ever make" a ruling such as the one he was challenging.

We don't intend to become the word police for the bar. But even so, we stress that language such as the above has no place in litigation. Harman's counsel could have zealously challenged each of the district court's rulings without being unprofessional. Indeed, from a pure advocacy standpoint, he would have been better served had he done so. As recognized by our supreme court, intemperate advocacy "is usually highly counterproductive" and can "distract[] the decision-maker from the merits of the case." *Peters v. Pine Meadow Ranch Home Ass'n*, 2007 UT 2, ¶ 21, 151 P.3d 962. Such advocacy is the rhetorical equivalent of turning on a cell phone in a crowded movie theater, with the effect in this context being to pull the judge's mind away from the merits of counsel's arguments and put it instead on counsel's professionalism and overheated word choices. If an attorney's goal is truly to persuade the court (as opposed to simply scoring rhetorical points), advocacy of this sort should be avoided.